J-S45037-23

2023 PA Super 273

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID ANTHONY ROSARIO | : | |
| | : | |
| Appellant | : | No. 372 MDA 2023 |

Appeal from the Judgment of Sentence Entered February 7, 2023
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0002944-2021

BEFORE: BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED: DECEMBER 27, 2023**

Appellant David Anthony Rosario appeals from the judgment of sentence entered in the Court of Common Pleas of Cumberland County following his conviction by a jury on the charges of aggravated assault (serious bodily injury to an enumerated person), aggravated assault (bodily injury to an enumerated person), and assault by prisoner.[1] After a careful review, we affirm.

The relevant facts and procedural history are as follows: On January 5, 2022, the Commonwealth filed an Information charging Appellant, an inmate

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(2), 2702(a)(3), and 2703(a)(1)(ii), respectively.

at SCI-Camp Hill, with the crimes indicated *supra*.[2] On August 29, 2022, Appellant, who was represented by counsel, proceeded to a jury trial at which the Commonwealth presented the testimony of C.O. Brandon Alexander, Lieutenant Jossuan Rivera, and Corporal Hilary Faust. Appellant testified on his own behalf.

C.O Alexander testified he has been a corrections officer at SCI-Camp Hill for six years. N.T., 8/30/22, at 21. As part of his normal job duties, he conducts security rounds to ensure the inmates are safe in their cells, as well as monitors the flow of inmates to ensure there is order within the prison. **Id.**

C.O. Alexander indicated that, on July 9, 2021, he was working from 2:00 p.m. to 10:00 p.m., and he was assigned to the E Block, which has approximately sixty cells arranged in four pods. **Id.** at 22. The pods are triangular shaped with two tiers of cells. **Id.** Each cell houses one inmate, and the cells' doors, which operate mechanically, are usually closed and locked. **Id.** at 23.

C.O. Alexander explained that a cell's door opens and closes when its corresponding button is pressed in the control bubble unit, which is accessible only by corrections officers and employees. **Id.** Pursuant to prison protocol, when a cell door is opened, two corrections officers stand by the cell's door

---

[2] The Commonwealth also charged Appellant with simple assault, 18 Pa.C.S.A. § 2701(a)(1), and recklessly endangering another person, 18 Pa.C.S.A. § 2705. However, the Commonwealth withdrew these two charges prior to trial.

while another corrections officer presses the button in the control bubble. *Id.* C.O. Alexander noted that, on the E block, inmates are not permitted to roam or be in common areas. *Id.* at 24. C.O. Alexander testified Appellant was housed in the B pod of E Block, and prior to July 9, 2021, C.O. Alexander had no "dealings with him." *Id.* at 25.

On July 9, 2021, while C.O. Alexander checked the cells and conducted a security round, he "got to right around [Appellant's] cell door, [Appellant] was able to get [the door] open, and [Appellant] rushed [C.O. Alexander] and assaulted [him]." *Id.* C.O. Alexander explained that he was approximately two cells away from Appellant's cell when Appellant's cell door unexpectedly opened. *Id.* at 26. Appellant "sprinted right at [C.O. Alexander]" and immediately punched him "square in the face" with a "closed fist." *Id.* at 27. Appellant punched C.O. Alexander approximately thirty more times with a closed fist with each punch landing on C.O. Alexander's head or face. *Id.*

During the assault, C.O. Alexander "started stumbling" and "ended up against the wall and eventually [he fell] to the floor." *Id.* at 28. While he was on the floor, he tried to cover his head with his arms while Appellant continued to punch him in the head and face. *Id.* C.O. Alexander feared that Appellant was trying to "either knock [him] out or kill [him]." *Id.* at 31. Eventually, other corrections officers, who had heard the assault, arrived on the scene, and they "forcibly removed" Appellant, who was still punching C.O. Alexander, by placing him in a bear hug. *Id.* at 29.

C.O. Alexander testified that, after the other corrections officers pulled Appellant off him, he was able to stand and walk to the lieutenant's office where a prison nurse examined him and sent him to a local hospital. *Id.* at 31-32. C.O. Alexander received a CAT scan, which was negative for brain injuries; however, C.O. Alexander was diagnosed with extensive contusions and swelling to his face, as well as cuts to his head. *Id.* at 32-34. He also had some bruising to his arm where Appellant had punched him while he was covering his head, as well as soreness to his knees from when he fell to the floor. *Id.* at 38, 42. It took approximately two weeks for the swelling and bruising to resolve, and C.O. Alexander noted his injuries were painful. *Id.* at 35-39. He was off work and on medical leave for approximately six months. *Id.* at 40.

C.O. Alexander explained that, when Appellant began punching him, no other corrections officers were in the vicinity because all of the cell doors on the E block, including Appellant's cell door, were supposed to be closed and locked. *Id.* at 28. C.O. Alexander testified that, prior to the July 9, 2021, incident, he neither observed nor heard of a prison door at SCI-Camp Hill opening unexpectedly without a corrections officer or employee pressing the appropriate button to open it. *Id.*

On cross-examination, C.O. Alexander noted another corrections officer was in the control bubble watching the E Floor while he conducted the security

check. *Id.* at 44-45. He admitted that inmates are generally aware that there are security cameras in the prison. *Id.*

On redirect examination, C.O. Alexander reiterated that, during the assault, he believed Appellant was trying to knock him out or kill him. *Id.* at 45. He noted Appellant punched him "hard" with his "full strength," and Appellant did not stop punching him until "someone pulled him off of [him]." *Id.* at 45-46. He testified that, even as the other corrections officers pulled Appellant off him, Appellant "was still trying to hit [him]." *Id.* at 46. C.O. Alexander testified he was surprised when Appellant exited his cell and immediately began punching him, and Appellant was hitting him "hard enough that [he] couldn't process [his] thoughts together or retain [his] thoughts" during the attack. *Id.* at 45.

Lieutenant Rivera testified that, on July 9, 2021, he was the lieutenant in charge of the E Block, and he worked from 2:00 p.m. to 10:00 p.m. *Id.* at 48-49. He confirmed the cells in the E Block are generally locked, and to unlock a cell's door, a control officer must "hit an override and then hit the cell button door." *Id.* at 50. He further confirmed that, pursuant to prison protocol, before a cell door is opened, two corrections officers must be positioned outside the cell door, and the inmate's hands must be handcuffed. *Id.* He noted that, during the eight years he has worked at SCI-Camp Hill, except for the instant incident, he has never heard of an instance where an

- 5 -

inmate had "gotten the door open when it was not supposed to be open[.]" *Id.*

Lieutenant Rivera testified that, on July 9, 2021, while he was talking to his sergeant on the A pod of E Block, he heard "a loud noise." *Id.* He looked over to the B pod of E Block, saw "Appellant was out of his cell, and [he] noticed that [C.O.] Alexander was on the floor." *Id.* at 51. "[Appellant] was on top of him swinging at him with closed fists about his head and body area." *Id.* C.O. Alexander was "on his knees trying to like tuck his head while he was on the floor[.]" *Id.* Meanwhile, Appellant was "on top of [C.O. Alexander's] back, just swinging down on him, trying to hit him with closed fists on his head and body area." *Id.* The lieutenant clarified Appellant was "punching" C.O. Alexander "in the head area." *Id.* at 52. He noted Appellant was not supposed to be out of his cell. *Id.*

Lieutenant Rivera testified his sergeant ran over to assist C.O. Alexander while the lieutenant alerted the rest of the corrections officers on the E Block to assist with the assault. *Id.* As other corrections officers responded, Lieutenant Rivera called the institutional control and medical to advise that medical assistance would be needed. *Id.* He then ran to assist C.O. Alexander. *Id.* He indicated that, in total, it took five or six correctional officers to restrain Appellant. *Id.* He indicated that C.O. Alexander's face was "very bruised," his eyes were "swollen shut," and "he was really disoriented." *Id.* at 53. He confirmed C.O. Alexander was initially examined by prison

medical personnel; however, he was then transported to an area hospital for further treatment and evaluation. *Id.* He also confirmed C.O. Alexander was off from work for six months for a work-related injury from the instant assault. *Id.* at 57.

Pennsylvania State Police Corporal Faust testified that, on July 9, 2021, she was in the Criminal Investigation Unit at PSP Carlisle, and she was assigned to investigate the instant assault. *Id.* at 62. Accordingly, she traveled to the hospital, and she interviewed C.O. Alexander, who explained the specifics of the assault to her.[3] *Id.* She then traveled to SCI-Camp Hill to interview Appellant, who waived his *Miranda*[4] rights and agreed to speak to Corporal Faust. *Id.* at 63.

Corporal Faust testified she asked Appellant how he was able to get his cell door open, and he indicated he had kicked it. *Id.* Appellant told her he "kicks at his door." *Id.* at 66. Appellant denied having any personal issues with C.O. Alexander, and he informed Corporal Faust that he didn't "know him at all." *Id.* at 64. Appellant then indicated he wanted to end the interview. *Id.*

Appellant testified he was an inmate at SCI-Camp Hill on July 9, 2021, when his cell's door suddenly slid open. *Id.* at 77. Appellant saw this as his

---

[3] She noted C.O. Alexander's description of the assault, which he provided in the hospital, was consistent with his trial testimony. *Id.*

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

"way out," so he ran out of his cell and "attacked" the corrections officer. *Id.* He testified he used "only [his] two hands," and he had no "ill will" toward the corrections officer. *Id.* at 78. He indicated he "didn't have [any] malicious intent toward this man himself, but the rage and anger [he] harbored was toward the entity he worked for." *Id.*

Appellant testified the reason he attacked C.O. Alexander was so that he would be transferred from SCI-Camp Hill to a different state correctional institution. *Id.* He testified he wanted to "start fresh somewhere" and leave behind the trauma he has experienced at SCI-Camp Hill. *Id.* He indicated C.O. Alexander was "at the wrong place at the wrong time," and he had no intent to hurt him. *Id.* at 79-80. He indicated he did not want to kill him. *Id.* at 81.

Appellant admitted he did not stop hitting C.O. Alexander when the "female sergeant" tried to stop him; however, he testified he kept hitting C.O. Alexander, as opposed to the "female sergeant," because he knew he could have completely "overpowered her." *Id.* at 80. He indicated he knew he was being monitored 24/7 on the E Block, and he believed he would have about "an 8 second window" to attack the corrections officer. *Id.* at 81.

On cross-examination, Appellant indicated he believes his cell door opened because either a prison employee inadvertently pushed his cell's door button or a storm caused the electronics to malfunction. *Id.* at 82. He admitted he did not exit his cell immediately when the door unexpectedly slid

open; but rather, he waited until the corrections officer on duty, C.O. Alexander, walked closer to his cell. *Id.* at 83. He indicated he assumed he would be stopped sooner by prison officials, but he admitted he could have stopped the assault sooner on his own. *Id.* He admitted he had "no regard for C.O. Alexander." *Id.* at 85.

At the conclusion of the trial, the jury convicted Appellant of the crimes set forth *supra*, and on September 8, 2022, the trial court sentenced Appellant to an aggregate of ten years to twenty years in prison. Appellant and the Commonwealth filed timely post-sentence motions, and on November 8, 2022, the trial court held a hearing at which "the parties agreed that Appellant had to be resentenced given an error in the sentencing guidelines previously agreed [to] at the original sentencing [hearing]."[5] Trial Court Opinion, filed 5/8/23, at 1 n.3. Since additional disputed issues remained outstanding, the trial court held an additional sentencing hearing on February 7, 2023, at which time the trial court sentenced Appellant to an aggregate of ten years to twenty years in prison, to be served consecutively to any other sentence Appellant was currently serving.

Appellant filed a timely, counseled notice of appeal on February 7, 2023, and all Pa.R.A.P. 1925 requirements have been met. On appeal, Appellant sets

_____

[5] The trial court noted the parties filed motions to extend the 120-day period for the trial court to decide the post-sentence motions, and on January 10, 2023, the trial court extended the post-sentence motions period by thirty days as permitted by Pennsylvania Rule of Criminal Procedure 720(B)(3)(a)-(b).

forth the following sole issue in his "Statement of the Questions Involved" (verbatim):

> 1. Whether the Commonwealth presented insufficient evidence to sustain Defendant's conviction of aggravated assault, 18 Pa.C.S.A. § 2702(a)(2), as the evidence neither established that the victim suffered serious bodily injury nor that Defendant intended to cause serious bodily injury.

Appellant's Brief at 3 (suggested answer omitted).

Appellant contends the evidence is insufficient to sustain his conviction for aggravated assault under 18 Pa.C.S.A. § 2702(a)(2).[6] Specifically, Appellant avers the Commonwealth failed to prove, beyond a reasonable doubt, that he caused or attempted to cause serious bodily injury to C.O. Alexander. Rather, Appellant contends C.O. Alexander suffered solely bodily injury, which was the intent of Appellant when he attacked the corrections officer. Appellant contends his case is indistinguishable from ***Commonwealth v. Alexander***, 477 Pa. 190, 383 A.2d 887 (1978), wherein our Supreme Court held the evidence was insufficient to sustain a defendant's conviction under Subsection 2702(a)(2).

Our scope and standard of review when considering challenges to the sufficiency of the evidence are as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope

---

[6] Appellant presents no argument or issue related to his conviction for aggravated assault under 18 Pa.C.S.A. § 2702(a)(3) or assault by prisoner under 18 Pa.C.S.A. §2703(a)(1)(ii). Accordingly, we do not address Appellant's convictions for these crimes.

- 10 -

of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Williams*, 176 A.3d 298, 305–06 (Pa.Super. 2017) (citations and quotation marks omitted).

Under 18 Pa.C.S.A. § 2702(a)(2), a person is guilty of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty."[7] 18 Pa.C.S.A. § 2702(a)(2). "Serious bodily injury" is "[b]odily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the

_____

[7] In the case *sub judice*, Appellant does not dispute that C.O. Alexander is a person enumerated in subsection (c) or that Appellant attacked him while he was in the performance of his duty. *See* 18 Pa.C.S.A. § 2702(c)(9) ("The officers, agents, employees and other persons referred to in subsection (a) shall be as follows…(9) Officer or employee of a correctional institution[.]").

function of any bodily member or organ." 18 Pa.C.S.A. § 2301. To sustain a conviction for aggravated assault, the Commonwealth need not show that serious bodily injury actually occurred, but only that the defendant attempted to cause serious bodily injury to another person. ***Commonwealth v. Galindes***, 786 A.2d 1004, 1012 (Pa Super. 2001). An "attempt" exists when "the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetuating serious bodily injury upon another." ***Id.*** (citation and quotation omitted).

In concluding Appellant is not entitled to relief on his sufficiency claim, the trial court relevantly indicated the following:

> In response to a special interrogatory question on the verdict slip, the jury indicated therein that it found the Commonwealth proved beyond a reasonable doubt that Appellant *attempted* to cause serious bodily injury, and not that Appellant did intentionally, knowingly, or recklessly cause such injury. While Appellant claims that the Commonwealth failed to prove the victim suffered a serious bodily injury *or* that Appellant intended to cause such injury, the Commonwealth was required to prove only one of the two theories [beyond a reasonable doubt]. ***See Commonwealth v. Lewis***, 911 A.2d 558, 564 (Pa.Super. 2006)[.] [The trial court], therefore, limits [its] analysis to whether the Commonwealth produced sufficient evidence to prove Appellant…attempted to cause serious bodily injury.
>
> ***
>
> [The trial court is] satisfied that the Commonwealth produced sufficient evidence to prove, and the jury could reasonably conclude, that Appellant intended to cause serious bodily injury to [C.O.] Alexander. Appellant launched a surprise attack on [C.O.] Alexander by bolting out of his cell at [C.O. Alexander] and immediately launching…30 punches to [C.O.] Alexander's face, head, and body, continuing as [C.O.] Alexander fell to the ground and knelt helplessly, attempting to cover his head. Appellant put his body weight on [C.O.] Alexander's back,

keeping [C.O.] Alexander down while [Appellant] continued punching him and did not stop until he was forcibly removed by another corrections officer. Finally, Appellant testified that he felt anger and rage toward the prison, and that the attack went much further than it needed to go, which, viewed in the light most favorable to the Commonwealth, also supports a finding that he intended to inflict serious bodily injury upon [C.O.] Alexander. ***See Commonwealth v. Dailey***, 828 A.2d 356, 360-61 (Pa.Super. 2003) (finding that the inmate intended to cause serious bodily injury to the corrections officer where he "delivered at least two closed-fist blows and was forcibly restrained while positioned to continue the attack")[.]

Trial Court Opinion, filed 5/8/23, at 6-8 (emphasis in original) (footnotes and citations omitted).

We agree with the trial court's sound reasoning. Specifically, assuming, *arguendo*, the evidence fails to establish C.O. Alexander suffered serious bodily injury from the assault, we conclude the evidence sufficiently establishes Appellant acted with the requisite intent to cause serious bodily injury to C.O. Alexander. During his surprise attack, Appellant punched C.O. Alexander approximately thirty times with closed fists about the head and face. C.O. Alexander testified the punches were "hard" and with Appellant's "full strength." N.T., 8/30/22, at 46. He noted he became disoriented during the attack and could not "process [his] thoughts[.]" ***Id.*** at 45. After C.O. Alexander fell to the ground and assumed a defensive posture, Appellant placed his weight on C.O. Alexander and continued to punch him until other corrections officers forcibly removed him.

We agree with the trial court that the instant case is akin to ***Dailey***, ***supra***, where we found the evidence sufficiently demonstrated the inmate

- 13 -

intended to inflict serious bodily injury on a corrections officer so as to support a conviction for aggravated assault under Subsection 2702(a)(2). In **Dailey**, the inmate delivered two closed-fisted punches to the corrections officer's face and had to be forcibly restrained by other corrections officers while standing in a position indicating he intended to continue the attack.

Moreover, we reject Appellant's claim that the instant case is indistinguishable from **Alexander**, **supra**, wherein our Supreme Court concluded the evidence that the appellant struck the victim with a single punch to the head, which resulted in a broken nose, was insufficient to sustain the appellant's conviction for aggravated assault. **Alexander**, **supra**, 383 A.2d at 889. The Court limited its holding to the facts of that case noting:

> In the instant case, the only direct evidence of [the] appellant's intent is his testimony to the effect that he did not intend to seriously injure the victim. Thus, any evidence of his intent must be gleaned from the other circumstances surrounding the appellant's attack on the victim. In this case there simply are no such circumstances….There is no evidence that [the] appellant was disproportionately larger or stronger than the victim; [the] appellant was not restrained from escalating his attack upon the victim; [the] appellant had no weapon or other implement to aid his attack; [the] appellant made no statements before, during or after the attack which might indicate his intent to inflict further injury upon the victim. [The] appellant delivered one punch and walked away.

**Id.**

In contrast to **Alexander**, in the case *sub judice*, Appellant delivered approximately thirty hard closed-fisted blows to the corrections officer, he continued the attack after the corrections officer had fallen to his knees and

- 14 -

assumed a defensive position, and he had to be forcibly removed away from the fallen corrections officer. The fact that other officers came to C.O. Alexander's aid before Appellant caused serious bodily injury to him does not preclude a finding that Appellant acted with intent to inflict serious bodily injury. ***See Dailey***, ***supra***. Accordingly, we hold the evidence was sufficient to sustain Appellant's conviction for aggravated assault under 18 Pa.C.S.A. § 2702(a)(2).

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/27/2023</u>