J-S13029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JOSHUA MICHAEL GORGONE | : | |
| Appellant | : | No. 979 WDA 2023 |

Appeal from the Judgment of Sentence Entered November 1, 2022
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000481-2021

BEFORE: KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                              **FILED: June 25, 2024**

Joshua Michael Gorgone ("Gorgone") appeals from the judgment of sentence imposed by the Cambria County Court of Common Pleas ("trial court") following his convictions of one count each of first-degree murder, robbery – inflict serious bodily injury, tampering with physical evidence, abuse of a corpse, and possession of drug paraphernalia, and two counts of theft by unlawful taking.[1]  On appeal, Gorgone challenges the sufficiency and weight of the evidence to support his convictions of first-degree murder, robbery, and theft by unlawful taking.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 3701(a)(1)(i), 4910(1), 5510, 3921(a); 35 P.S. § 780-113(a)(32).

On the morning of April 5, 2021, Denise Williams ("Williams") and Gorgone exchanged messages through Facebook Marketplace to arrange for his sale of a mini fridge. They agreed that Williams would come to Gorgone's apartment in Geistown Borough, Cambria County that afternoon to look at the refrigerator. After her first visit to Gorgone's apartment at 2:19 p.m., Williams drove to MERHO Federal Credit Union and withdrew $160. While withdrawing the money, Williams told the teller she was excited about purchasing the mini fridge that she had just gone to see and was withdrawing the cash to purchase the mini fridge. During the drive, Williams called a co-worker to tell her that she liked the mini fridge and was going to buy it.

Williams' daughter, Karlee Williams ("Karlee"), lived with Williams in Johnstown. Karlee routinely came home at the end of her workday and met Williams there. On April 5, 2021, Karlee came home at 4:30 p.m. and found Williams' work bag and purse at home, but she was unable to locate Williams. After several hours of searching for her, Karlee notified the police that her mother was missing. In Karlee's efforts to locate Williams, she learned from Williams' boyfriend that she had planned to purchase a mini fridge through Facebook Marketplace that afternoon. Karlee accessed her mother's Facebook account and determined the address where Williams was planning to purchase the mini fridge. She contacted law enforcement again and provided them with the address.

Officer Konnor Holliday recovered Williams' phone in the West End of Johnstown later that night while looking for her and her vehicle. Through its OnStar capabilities, officers were able to locate Williams' vehicle in Richland Township around 10:00 p.m. Responding officers observed fresh blood on the driver's side door. Within the vehicle, officers recovered a bank receipt from MERHO Federal Credit Union along with a small bag of suspected drugs in the center console of the vehicle, which later tested positive for fentanyl.

After Karlee notified the Johnstown Police Department that Williams was last known to be in the process of purchasing a mini fridge from Gorgone, officers contacted Geistown Borough Police Department with the sale address. Officers from the Geistown Borough and Richland Township police departments responded to the apartment complex at the address. Officers located Gorgone's apartment but received no response when they knocked and announced their presence. The landlord arrived on the scene, confirmed that Gorgone rented the apartment, and gave the officers a key. They unlocked the door and began searching the studio apartment. They observed fresh blood on the bathroom door but again received no response when they knocked and announced their presence. They entered the bathroom and discovered a comforter in the corner that was rolled around Williams' motionless body and a significant amount of blood.

Williams was pronounced dead on April 6, 2021, at 4:30 a.m., with the manner of death ruled homicide and the cause of death determined to be

exsanguination caused by multiple stab wounds (sixty-eight total) to her head, neck, chest, and left arm. Police recovered the kitchen knife from Gorgone's apartment that was determined to have been used in the attack on Williams. Police did not, however, locate the cash Williams withdrew for purchasing the mini fridge.

Shortly after 11:00 a.m. on April 6, 2021, police apprehended Gorgone. Detectives with the Cambria County District Attorney's Office interviewed Gorgone later that day. In the interview, Gorgone stated that Williams had come to his apartment to buy a mini fridge when they had a disagreement over the price. Gorgone indicated Williams grabbed one of his kitchen knives, began swinging it at him, and persisted in "coming at" him. Gorgone admitted to stabbing Williams multiple times in the chest during the altercation. He stated that he then took a walk before returning to move her body to his bathroom and using her car to go "get dope" in Johnstown.

The Commonwealth charged Gorgone as detailed above. The case proceeded to a jury trial in September 2022, at the conclusion of which the jury found Gorgone guilty of all charges. On November 1, 2022, the trial court sentenced Gorgone to life in prison without the possibility of parole for his first-degree murder conviction, and consecutive prison terms of 96 to 240 months for his robbery conviction, 3 to 24 months for each theft by unlawful taking conviction, and 4 to 24 months for his drug paraphernalia conviction.

On November 10, 2022, Gorgone filed timely post-sentence motions, which the trial court denied.

Gorgone timely appealed and raises the following questions for our review:

1. Whether the Commonwealth failed to provide sufficient evidence to sustain convictions on the charges filed by the Commonwealth in the Criminal Information?

2. Whether the verdict of guilty as reached by the jury was against the weight of the evidence?

Gorgone's Brief at 2 (unnumbered).

### Sufficiency of the Evidence

In his first claim, Gorgone argues that the evidence was insufficient to support his convictions of first-degree murder, robbery, and one count of theft. *Id.* at 12-13. As to his murder conviction, Gorgone states that the Commonwealth failed to present sufficient evidence that the killing was willful, deliberate, and premeditated, as the only evidence presented at trial of his intent was through his recorded interview with police, which he contends supports his defense that Williams was the aggressor. *Id.* at 12.

For the charges of robbery and theft, Gorgone asserts that no evidence established he was in possession of Williams' money at any point, nor that the injuries inflicted upon Williams occurred in the course of committing a theft. *Id.* at 14-16. Gorgone avers that mere suspicion that he took the money is not sufficient to establish the theft occurred. *Id.* at 15. Gorgone further claims that although he took Williams' vehicle, the evidence did not establish

he had the requisite intent because he did not have an interest in the vehicle.

*Id.*

We review a challenge to the sufficiency of the evidence according to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Rosario,* 307 A.3d 759, 764-65 (Pa. Super. 2023) (citation omitted).

We will first address Gorgone's first-degree murder conviction. Our Supreme Court has identified the elements of first-degree murder as follows: "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." *Commonwealth v. Martin*, 101 A.3d 706, 718 (Pa. 2014) (citing 18 Pa.C.S. § 2502(a)). Circumstantial evidence may prove specific intent and malice where a defendant uses a deadly weapon on a vital part of the victim's body. *Commonwealth v. Hicks*, 156 A.3d 1114, 1124 (Pa. 2017).

The record reflects that, during the interview conducted with police after his arrest, Gorgone admitted to stabbing Williams. N.T., 5/19/2022, at 12 (Commonwealth Ex. 3).[2] Williams' autopsy report indicates that she suffered eight wounds to the skull and scalp, three wounds to the face, twenty-four wounds to the left side of her neck, and at least eight wounds to her chest. N.T., 9/27/2022, at 53-56. There was no evidence presented to establish that Williams provoked Gorgone to such an extent that he killed Williams. *See Commonwealth v. Johnson*, 42 A.3d 1017, 1036 (Pa. 2012) (noting in the absence of evidence that the victim sufficiently provoked the defendant causing him to kill victim, "the killing will be murder") (citation omitted). Even if there was such evidence, the jury was free to disregard it. *See Rosario*, 307 A.3d at 765 (citation omitted). Thus, the evidence, viewed in a light most favorable to the Commonwealth as the verdict winner, indicates that Gorgone used a deadly weapon on multiple vital parts of Williams' body, sufficiently establishing that Gorgone caused her death with the requisite intent to support a conviction of first-degree murder. *See Commonwealth v. Knight*, 156 A.3d 239, 244 (Pa. 2016) (concluding the evidence was sufficient to support defendant's first-degree conviction and specific intent to kill where the

_____

[2] Gogone's interview with the police was read into the record at a hearing on his pretrial motion. Our review of the audio recording of the interview confirms the accuracy of Gorgone's interview transcript. The audio recording was entered into evidence at trial.

evidence demonstrated he stabbed the victim in the chest multiple times before slashing her throat).

We now turn to Gorgone's argument that the evidence was insufficient to support his convictions of robbery and theft. The Pennsylvania Crimes Code defines robbery, in pertinent part, as follows:

> (1) A person is guilty of robbery if, in the of committing a theft, he:
>
> > (i) inflicts serious bodily injury upon another;
>
> > \* \* \*
>
> (2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

18 Pa.C.S. § 3701(a)(1)(i), (2). "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." *Id.* § 3921(a).

Here, the Commonwealth presented evidence that Williams spoke to several people about the fact that she was buying a mini fridge. N.T., 9/26/2022, at 45, 66-69, 76-78. She went to the bank, withdrew the money specifically for that purpose, and drove back to Gorgone's apartment to effectuate the purchase. *Id.* Following her murder, the money Williams withdrew was not found in her purse or on her person. N.T., 9/26/2022, at 57.

The evidence further established that Gorgone, a drug addict, was experiencing terrible withdrawal symptoms in the days leading up to Williams'

murder. N.T., 9/26/2022, at 97-100. He sent numerous text messages to a contact indicating that he needed drugs but had no money or transportation. *Id.* Gorgone admitted to police during his interview, however, that after moving Williams' body to his bathroom, he drove her vehicle to "go get dope." Police Interview Transcript, 5/19/2022, at 12 (Commonwealth Ex. 3). He claimed that the dealer "fronted" him the drugs and did not require him to pay the eighty dollars that a gram would typically cost him. *Id.* When police recovered Williams' vehicle, there was a receipt from Williams' withdrawal of money from the bank, a bag of fentanyl in the center console, but no money. N.T., 9/27/2022, at 19.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the record circumstantially supports a finding that Gorgone murdered Williams and stole her money to purchase drugs. Although Gorgone claimed that he did not pay for any drugs on the day of the incident, the jury, as factfinder, was free to disregard and disbelieve that self-serving statement. *See Rosario*, 307 A.3d at 765. And while the money was never found, the law is clear that "there is no requirement that the items taken in a theft or robbery be recovered." *Commonwealth v. Robinson*, 817 A.2d 1153, 1161 (Pa. Super. 2003). Moreover, the jury could have easily inferred that Gorgone purchased the drugs found in the center console of Williams' vehicle with the money she had planned to spend on the mini fridge.

In light of the foregoing, there is ample evidence to support Gorgone's first-degree murder, robbery, and theft convictions. Accordingly, Gorgone's first claim is without merit.

### **Weight of the Evidence**

In his second claim, Gorgone argues that his convictions are against the weight of the evidence presented at trial. Gorgone's Brief at 17. Gorgone argues that the Commonwealth failed to refute Gorgone's recorded statements that Williams provoked the attack. *Id.* at 19.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> Thus to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks and citations omitted).

Our standard of review for weight of the evidence claims, however, differs from that of the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

Gorgone points to statements he made to the police where he presented an account of the events leading up to Williams' death, highlighting his assertion that Williams initiated an altercation by slapping Gorgone, grabbing his kitchen knife, and relentlessly attacking him. Police Interview Transcript, 5/19/2022, at 12 (Commonwealth Ex. 3). In Gorgone's version of events, he stabbed Williams in self-defense. *Id.*

In so arguing, Gorgone ignores the totality of the evidence presented at trial and asks this Court to reweigh the evidence in his favor, finding the entirety of his statement to the police credible. The jury, however, as factfinder, is the arbiter of credibility, *Juray*, 275 A.3d at 1046, and, as we have repeatedly stated throughout this decision, it is free to believe or disregard any part of a witness' testimony. *See Rosario*, 307 A.3d at 765; *see also Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact") (citation omitted).

The trial court found that "the evidence presented at [Gorgone's] trial was not tenuous, vague, or uncertain. There were no certain facts of greater weight that ignoring them would result in a denial of justice; the jury's verdict does not shock the conscience of the court." Trial Court Opinion, 10/17/2023, at 5. We find no abuse of discretion in that determination.

As stated above, there was ample evidence presented to support a finding that Gorgone committed the crimes for which he was convicted. A drug addict in need of a fix, Gorgone stabbed a woman sixty-eight times and stole her money after she came to his house believing she was purchasing a mini fridge. He wrapped her in a comforter, put her in his bathroom, and then stole her car and drove it to make his buy. Gorgone's version of events was also presented to the jury, which they clearly disbelieved. Simply put, the jury heard all the testimony, weighed it, and rendered a guilty verdict, and the trial court found that determination to be supported by the evidence presented. Accordingly, Gorgone is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/25/2024

- 12 -