J-A02032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                 :        PENNSYLVANIA
                                 :
           v.                     :
                                   :
TROY ANTHONY DEW           :
                                   :
          Appellant           :    No. 689 WDA 2024

Appeal from the Judgment of Sentence Entered October 19, 2022
In the Court of Common Pleas of Clarion County Criminal Division at
No(s): CP-16-CR-0000142-2021

BEFORE: KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY BECK, J.:            **FILED: March 19, 2025**

Troy Anthony Dew ("Dew") appeals from the judgment of sentence imposed by the Clarion County Court of Common Pleas ("trial court") following his convictions of involuntary deviate sexual intercourse with a child, sexual assault, indecent assault of person less than thirteen years of age, and corruption of minors.[1] Dew contends that the evidence was insufficient to support his convictions. Upon review, we affirm.

Dew's convictions arise out of allegations made by his former stepdaughter, E.H., born in August 2005, that Dew had sexually assaulted her when she was seven or eight years old. E.H. indicated that Dew was married to her mother and they lived together, with E.H.'s siblings, in a home in

_____

[1] 18 Pa.C.S. §§ 3123(b), 3124.1, 3126(a)(7), 6301(a)(1)(ii).

Clarion. E.H. reported the assaults to her psychiatrist in 2020. The matter was reported to Lawrence County Children and Youth Services,[2] which sent notice of child abuse allegations to the police. Subsequently, police arrested Dew, and on March 10, 2021, the Commonwealth charged him with numerous crimes.

The case proceeded to a jury trial on March 31, 2022, at which E.H., E.H.'s foster mother, and Police Officer Shawn Zerfoss, the affiant in Dew's case, testified. Of relevance here, E.H. testified that she was sixteen years old at the time of trial and that Dew assaulted her seven to eight years prior. N.T., 3/21/2022, at 28, 30-31. She stated that Dew would take her upstairs to the master bedroom and touch her genitals and breasts with his hands and fingers. *Id.* at 31, 32. E.H. indicated that Dew would touch her under her clothing. *Id.* at 33-34. She further testified that Dew would make her touch and suck on his penis. *Id.* She stated that she was alone with Dew every time he assaulted her and that the assaults occurred on multiple occasions. *Id.* at 34, 35, 45-46. E.H. recalled that Dew would bribe her with candy and video games to stay silent about the assaults and that she did not tell people of the assaults sooner because she feared what people would say. *Id.* at 32, 35-36.

---

[2] At the time, E.H. was living with her foster parents in New Castle, Pennsylvania.

On cross-examination, E.H. admitted that she did not remember how long her mother and Dew lived together, and that "[t]imes are really fuzzy for me[.]" *Id.* at 39. E.H. acknowledged that she met with the psychiatrist, to whom she reported the assaults, because of issues with her behavior and an overdose in November 2020. *Id.* at 43-44. E.H. further noted that in an interview conducted following her disclosure, she had trouble remembering details of the house she lived in with Dew and details of the abuse. *Id.* at 44-45. She also could not recall the details of the video games or candy that Dew used to bribe her to remain silent. *Id.* at 47.

Officer Shawn Zerfoss testified that he was the lead officer on the case. *Id.* at 68. He stated that the case initially involved E.H. and her sister, but there was no abuse reported by E.H.'s sister. *Id.* at 68-69. Officer Zerfoss acknowledged that there was no physical evidence collected in the case. *Id.* at 76.

Following trial, the jury convicted Dew of the aforementioned crimes. Subsequently, the trial court found Dew to be a sexually violent predator and sentenced Dew to an aggregate term of twenty-one to forty-two years of incarceration. Dew filed a timely appeal, but this Court dismissed the appeal because Dew failed to include a copy of the Pa.R.A.P. 1925(a) opinion with his brief. *See Commonwealth v. Dew*, 1341 WDA 2022 (Pa. Super. Aug. 28, 2023) (Order).

Dew then filed a petition pursuant to the Post Conviction Relief Act ("PCRA"),[3] seeking to have his direct appeal rights reinstated. The PCRA court granted the petition and reinstated Dew's direct appeal rights. Dew filed an appeal nunc pro tunc. Dew and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Dew raises the following questions for our review:

1. Was the evidence at trial qualitatively insufficient to support Dew's convictions because it was so vague and unreliable that the jury had to speculate as to whether Dew engaged in any of the alleged conduct?

2. Was the evidence at trial qualitatively insufficient to support his derivative conviction for corruption of minors?

Dew's Brief at 5.

We will review Dew's claims together. We review challenges to the sufficiency of the evidence according to the following standard:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh

---

[3] 42 Pa.C.S. §§ 9541-9546.

- 4 -

the evidence and substitute our judgment for that of the [factfinder].

***Commonwealth v. Rosario***, 307 A.3d 759, 764-65 (Pa. Super. 2023) (citation omitted).

In his first claim, Dew contends the evidence was insufficient to support his convictions because the evidence was "so vague and unreliable that the jury had to speculate as to whether Dew engaged in the alleged conduct." ***Id.*** at 19; ***see also id.*** at 28-30, 33-36. Citing to ***Commonwealth v. Karkaria***, 625 A.2d 1167 (Pa. 1993), Dew maintains E.H.'s testimony was inherently unreliable and, therefore, was insufficient to support his convictions. Dew's Brief at 30-32. To that end, Dew argues that E.H. provided only vague, nondescript information about what allegedly occurred, did not provide any details of how or when he committed the acts alleged, and there was no physical evidence of any of the offenses. ***Id.*** at 19-20, 22, 28, 36; ***see also id.*** at 23, 25-26 (further noting that E.H. could not provide details about when she moved out of Dew's home or details about the home). Dew highlights that E.H.'s allegations of abuse transpired years before the trial and that she provided no timeline as to when the incidents occurred or how many assaults occurred. ***Id.*** at 21-23, 25, 28-29, 32-33, 36; ***see also id.*** at 28 (noting that E.H.'s foster mother testified at trial to provide a timeline of E.H.'s adoption, but did not testify to any assault allegations). Dew also states that E.H. failed to provide details about the touching or oral sex, whether the assaults occurred over or under her clothing, and only provided one scenario as to how

Dew would get her alone to assault her. *Id.* at 22-25, 32. Dew posits that E.H.'s credibility was further undermined by her unsupported allegation that Dew had abused her sister. *Id.* at 27, 29, 33. Additionally, Dew argues that E.H. provided inconsistent testimony as to the reasons for disclosing the alleged assaults to her psychologist, noting she could not recall that she overdosed in November 2020, which led her to see the psychologist. *Id.* at 22, 26, 29. Dew therefore contends his convictions must be vacated. *Id.* at 36.

Dew sets forth a separate, standalone argument as to the sufficiency of the evidence to support his "derivative conviction for corruption of minors." *Id.* at 37-38.[4] Dew argues that because of the "infirmity of his other convictions, his derivative conviction for corruption of minors is likewise infirm and should be vacated." *Id.* at 37. According to Dew, the evidence that he engaged in any "course of conduct"[5] was so vague that could not be credited as a matter of law. *Id.* at 37-38.

_____

[4] Dew raises this claim despite arguing in his first issue that the evidence was insufficient to support any of his convictions.

[5] Relevantly, the Crimes Code defines corruption of minors as follows:

> Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

*(Footnote Continued Next Page)*

Dew does not contend that the Commonwealth failed to present evidence in support of any particular element of the crimes in question. Instead, he contends that although E.H. provided testimony in support of the elements of the crimes for which he was convicted, her recitation of what occurred lacked credibility. Generally, our review of a challenge to the sufficiency of the evidence to support a conviction "does not include an assessment of [the] credibility of testimony;" such arguments "are more properly characterized as challenges to weight of evidence." ***Commonwealth v. Juray***, 275 A.3d 1037, 1043 (Pa. Super. 2022). In ***Karkaria***, however, our Supreme Court observed the following with respect to the intersection of witness credibility and the sufficiency of the evidence to support a conviction:

> Normally, the evidence is deemed to be sufficient where there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. The question of credibility is left to the jury and the verdict will not be disturbed if the jury determines the evidence is worthy of belief.

> We have, however, made exception to the general rule that the jury is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture.

> Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution. This concept, however, must be distinguished from an equally fundamental

_____

18 Pa.C.S. § 6301(a)(1)(ii). "[T]he use of the phrase 'course of conduct' in the first provision of subsection (a)(1)(ii) imposes a requirement of multiple acts over time, in the same manner." ***Commonwealth v. Kelly***, 102 A.3d 1025, 1031 (Pa. Super. 2014) (en banc).

principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding.

*Karkaria*, 625 A.2d at 1170 (citation and paragraph break omitted); *accord*

*Commonwealth v. Brown*, 52 A.3d 1139, 1157 n.18 (Pa. 2012) (stating that

in "extreme situations where witness testimony is so inherently unreliable ...

that it makes the jury's choice to believe that evidence an exercise of pure

conjecture, any conviction based on that evidence may be reversed on the

grounds of evidentiary insufficiency").

In *Karkaria*, the Commonwealth charged the defendant with rape and

other offenses based on allegations that he repeatedly sexually assaulted his

stepsister between April 9, 1984, and September 19, 1984. *Karkaria*, 625

A.2d at 1167, 1171. However, the complainant testified that the defendant

assaulted her in 1981, and Commonwealth failed to present evidence of a

single act of intercourse between April and September 1984. *Id.* at 1171.

The complainant also offered only one scenario for the repeated assaults,

noting the defendant would undress her and lay on top of her, that she did

not physically resist him, and the defendant never threatened or bribed her

for her silence. *Id.* at 1168, 1171-72. On appeal, our Supreme Court

explained:

> In order for the jury in this case to have concluded that [the complainant] was forcibly raped by [the defendant], the jury would have had to conclude that [the complainant] had been

forced to submit to sexual intercourse at least once between April 9, 1984 and September 19, 1984. Since there was no direct evidence of sexual intercourse between those dates, the jury in order to convict, would have had to conclude, beyond a reasonable doubt, that [the complainant] had been forced to submit to sexual intercourse over 300 times, without ever feeling pain, without any physical evidence to support the contention that she was so victimized, and without any specific recollection by [the complainant] as to a date certain upon which even one of the several hundred assaults occurred.

*Id.* at 1170-71. Reviewing the evidence presented, the *Karkaria* Court concluded that, even when examined in the light most favorable to the Commonwealth, it "is so unreliable and contradictory that it is incapable of supporting a verdict of guilty, and thus, is insufficient as a matter of law." *Id.* at 1172 (footnote omitted).

[I]n her initial report to the police, [the complainant] could not recall having been penetrated by [the defendant]. In her original report to the District Attorney, a prosecution was declined because [the complainant] was unable to offer sufficient testimony as to the material elements of the crime of rape. The timing of these initial complaints to law enforcement authorities coincide precisely with the pending reconciliation of her mother and stepfather. This fact is important in light of [the complainant]'s repeated expressions of hatred for her stepfather.

[The complainant]'s testimony as to when any particular act of rape occurred is disturbingly vague. She initially insisted that the assaults only occurred on Friday or Saturday evenings. She also maintained that [her other stepbrother] was never present when the assaults occurred. However, when confronted with her own testimony that [her other stepbrother] was in her home every other weekend from Friday evening to Sunday evening and that on the alternate weekends [the defendant] was not in the home, she testified that the assaults occurred at another time. However she failed to specify when that particular opportunity arose. [the complainant] steadfastly maintained that the assaults only occurred when [the defendant] was babysitting, and, as she testified that her parents only went out on Friday or Saturday

evenings, that would have been the only opportunity for [the defendant] to have assaulted her.

The most striking inadequacy in the Commonwealth's case however, is the fact that [the complainant] insisted that the assaults only occurred when [the defendant] was babysitting and yet she also admitted that during the time period charged in the indictment (April through September 1984), [the defendant] no longer acted as the babysitter. This point is extremely troublesome when considered along with [the complainant]'s description of the numerous rapes. [The complainant]'s testimony described only one specific act of intercourse which she states occurred in 1981, shortly after she and [the defendant] began living within the same family unit. [The complainant] never offers testimony from which the jury could reasonably conclude that any particular act of rape occurred other than the one incident described in 1981. In fact [the complainant] corroborates Ian's testimony that not only was he no longer the babysitter in 1984, but that he was rarely even in the family home during that time period. The total failure of the Commonwealth to present any evidence that a single act of intercourse occurred during the period of April through September 1984 casts serious doubt upon the jury's ability to reasonably conclude that any criminal activity occurred during the time period charged.

*Id.* at 1171.

The testimony presented in the case at bar is a far cry from that of

*Karkaria*. Viewing the evidence in a light most favorable to the

Commonwealth, as we must, E.H.'s testimony established that Dew

committed the crimes for which he was convicted. *See Commonwealth v.*

*Diaz*, 152 A.3d 1040, 1047 (Pa. Super. 2016) (stating "the uncorroborated

testimony of a sexual assault victim, if believed by the trier of fact, is

sufficient" to sustain a conviction) (citation omitted); *see also* 18 Pa.C.S.

§ 3106 (explaining that the "testimony of a complainant need not be

corroborated in prosecutions" for sexual offenses). That the Commonwealth

did not introduce physical evidence does not render E.H.'s testimony incredible. **See Diaz**, 152 A.3d at 1047 (stating "lack of corroborating physical evidence does not undermine the victim's testimony").

Nor does E.H.'s failure to recollect certain details about the home she lived in and the events that occurred almost a decade ago require a finding that her testimony was wholly unworthy of belief. Most significantly, unlike in **Karkaria**, E.H.'s testimony and prior statements did not render the claims made impossible. Simply put, any vagueness in E.H.'s testimony was not dispositive of the elements of the offenses in question; and accounting for the passage of time, her testimony was not wholly unreliable, as it is the factfinder's duty to weigh the evidence and make credibility determinations. **See Commonwealth v. Smith**, 181 A.3d 1168, 1186 (Pa. Super. 2018) (noting that victim's delay in reporting the sexual assault must "be weighed by the trial court in determining the victim's credibility"). Accordingly, the evidence was sufficient to support Dew's convictions.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/19/2025

- 11 -