J-A18022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL GASKIN | : | |
| | : | |
| Appellant | : | No. 2422 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 25, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009089-2021

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED SEPTEMBER 3, 2025**

Michael Gaskin ("Gaskin") appeals from the judgment of sentence entered by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of voluntary manslaughter and possession of an instrument of crime.[1] On appeal, Gaskin challenges the sufficiency and weight of the evidence to support his voluntary manslaughter conviction. After careful review, we affirm.

On March 14, 2021, Gaskin's eight-year-old daughter texted her grandfather, Roland Smith ("Smith"), that Gaskin was beating her mother, Ashley Smith ("Ashley"). Smith then called Ashley and requested that she get a restraining order and inform the police. Gaskin texted Smith an explanation

_____

[1] 18 Pa.C.S. §§ 2503(b), 907.

of his version of events, but Smith did not respond. Smith texted his other daughter that he planned to go to Ashley's apartment the next day to remove Gaskin from the apartment or Gaskin was "going to get f[*]cked up." N.T., 12/15/2023, at 55.

On March 16, 2021, Smith visited Ashley's apartment with his friend, Jeffrey Harvey ("Harvey"). Gaskin was also in the apartment. Subsequently, Gaskin, Harvey, and Smith engaged in a heated conversation. Ashley attempted to diffuse the situation by standing between Gaskin and Smith. Gaskin and Smith pushed Ashley to the side and moved closer to one another. Harvey then came forward to join Smith, backing Gaskin against the wall. At this point, the altercation between Gaskin, Smith, and Harvey became physical. During the fracas, two holes were left in the wall behind where Gaskin was standing. Thereafter, Ashley's daughter came out of her room upset, and Smith attempted to console her. As Smith turned to speak to his granddaughter, Gaskin grabbed a gun and shot Harvey in the chest, killing him.

Police arrested Gaskin, and the Commonwealth charged him with murder, voluntary manslaughter, possessing an instrument of crime, aggravated assault, simple assault, and recklessly endangering another person. The trial court proceeded to a bench trial on December 15, 2023, after which the judge found Gaskin guilty only of voluntary manslaughter and possessing an instrument of crime.

On March 25, 2024, the trial court sentenced Gaskin to three and one-half to ten years of incarceration for voluntary manslaughter followed by five years of probation for possessing an instrument of crime. Gaskin filed a post-sentence motion, which the trial court denied. He then filed this timely appeal.

Gaskin raises two issues on appeal:

(1) Was the evidence insufficient to disprove beyond a reasonable doubt that [Gaskin] reasonably believed that deadly force was necessary?

(2) Was the verdict, which deemed unreasonable [Gaskin]'s belief that deadly force was necessary, against the weight of the evidence?

Gaskin's Brief at 2.

## Sufficiency of the Evidence

Gaskin first challenges the sufficiency of the evidence to support the trial court's finding that he unreasonably believed that deadly force was necessary to protect himself from serious bodily injury or death under the circumstances. He argues that the evidence presented established his belief was reasonable because he was in his home, was pinned against the wall by two very large aggressors, Smith and Harvey punched him with enough force to punch holes in the walls, and Smith threatened to harm him in the days preceding the altercation. *Id.* at 10-14. Further, he did not provoke the use of force against him and had no duty to retreat in his own home. *Id.* at 11. He contends that Smith and Harvey came to his home with the goal of using force against him, noting both Smith and Harvey were over two hundred

pounds, both men were throwing punches over nearly five minutes, and Harvey possessed a firearm. *Id.* at 11-13; *see also id.* at 11 (wherein Gaskin admits he is also a large man). Gaskin claims that he reasonably needed to use deadly force to protect himself, and therefore he should not have been found guilty of voluntary manslaughter. *Id.* at 13-14.

Our Court's standard of review of a challenge to the sufficiency of the evidence is well settled:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact[] finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Juray*, 275 A.3d 1037, 1042 (Pa. Super. 2022) (quotation marks and citations omitted). The fact finder "is free to believe all, part, or none of the evidence presented." *Commonwealth v. Williams*, 302 A.3d 117, 120 (Pa. Super. 2023) (quotation marks and citation omitted).

The Crimes Code defines voluntary manslaughter, in relevant part, as follows:

> **(b) Unreasonable belief killing justifiable.**--A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

18 Pa.C.S. § 2503(b). Deadly force used in self-defense will result in an acquittal of a charge of voluntary manslaughter if the following elements are met:

> (a) that the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat. Although the defendant has no burden to prove self-defense, ... before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding. Once the question is properly raised, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense. The Commonwealth sustains that burden of negation if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or that the slayer violated a duty to retreat or avoid the danger.

*Commonwealth v. Williams*, 176 A.3d 298, 309 (Pa. Super. 2017) (citations and quotation marks omitted).

> A number of factors, including whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident, are all relevant when determining the reasonableness of a defendant's belief that the use of deadly force was necessary to protect against death or serious bodily injuries. No single factor is dispositive.

*Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa. Super. 2014) (citation omitted).

Smith testified that Ashley invited Harvey and him into the apartment and he briefly spoke to Gaskin in the kitchen while Harvey stood a few feet away from them. N.T., 12/15/2023, at 35. Gaskin then sat down on the living room sofa while Smith and Harvey stood in front of him. *Id.* at 38-39. As the conversation shifted to Ashley and Gaskin's relationship, tension escalated, and Gaskin stood up. *Id.* at 35, 40. Ashley then stood between Gaskin and Smith in an attempt to diffuse the situation. *Id.* at 71, 98, 100-101. Gaskin and Smith pushed Ashley to the side and both moved closer to one another. *Id.* at 99. Harvey then came forward to join Smith and Gaskin was against the wall. *Id.* at 98-99. According to Ashley, punches were thrown by "everyone," and although she did not see a punch connect with the wall, the damage occurred during the calamity of the fight. *Id.* at 101, 108.

At this point, Smith's granddaughter entered the room. *Id.* at 101. Smith turned to face his granddaughter, told her everything was ok, and then he saw Gaskin reach for his gun and shoot Harvey. *Id.* at 41; *see also id.* (Smith testifying that Harvey was also facing Smith's granddaughter just before the shooting); *id.* at 102-03 (Ashley testifying that she walked away from the altercation when her daughter came out of her bedroom, at which point she saw Gaskin grab his gun from the shoe rack in the living room, heard a pop, and saw that Harvey was shot). Smith claims that neither he nor Harvey was physical with Gaskin at the moment Gaskin reached for his gun. *Id*. Smith and Ashley both testified that Harvey did not pull out his gun or

use any other weapons. *Id.* at 45, 103. Smith testified that Gaskin then pointed his gun at him and that he ran out of the house, screaming for someone to call the police. *Id.* at 42. Ashley testified that the physical altercation lasted approximately five minutes and police arrived at her apartment soon after. *Id.* at 116.

The Commonwealth also presented Smith's text messages from the days preceding the incident and showed that Smith never threatened Gaskin directly, but did send a text message to a third party that Gaskin "was going to get f[*]cked up." *Id.* at 55.

The trial court found that the Commonwealth proved, beyond a reasonable doubt, that "Gaskin's belief that deadly force was necessary was unreasonable." Trial Court Opinion, 10/10/2024, at 10. "Gaskin could not have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom." *Id.*

Viewing the evidence in the light most favorable to the Commonwealth, we find no error in the trial court's conclusion, as the record supports a finding that Gaskin did not reasonably believe he was in imminent danger of death or serious bodily injury. The record reflects that this was a mutual fight between three large men. Neither Smith nor Harvey brandished a weapon at any point during the fight. Indeed, although Harvey had a firearm secured in a holster on his waist, there is nothing to suggest that he attempted to reach for or use

the firearm at any point during the altercation. Further, the physical altercation was at a lull when Gaskin reached for his gun and shot Harvey.

The evidence therefore established that Gaskin did not act in self-defense. As such, the evidence was sufficient to support Gaskin's voluntary manslaughter conviction, as Gaskin intentionally or knowingly killed Harvey based upon the unreasonable belief that the killing was justified. *See Commonwealth v. Weston*, 749 A.2d 458, 462 (Pa. 2000). Thus, Gaskin's first claim is without merit.

## Weight of the Evidence

Gaskin further argues that his conviction of voluntary manslaughter is against the weight of the evidence presented at trial. Gaskin's Brief at 14. He asserts that Ashley's testimony that Smith and Harvey repeatedly punched him, the photographic evidence of the holes in the wall, Gaskin's swollen face, and Smith's threatening text message prove that the verdict was against the weight of the evidence. *Id.* at 14-15. According to Gaskin, he reasonably believed he was justified in shooting Harvey. *Id.* at 15.

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Thus to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the trial court.

*Juray*, 275 A.3d at 1046-47 (quotation marks and citations omitted).

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

The trial court found no merit to Gaskin's weight claim; it concluded that "the evidence in this case was compelling and substantial[] and strongly supported the verdict." Trial Court Opinion, 10/10/2024, at 13. We find no abuse of discretion in that determination. The trial court, as fact finder, did not credit Gaskin's self-defense claim, and found the Commonwealth presented sufficient evidence to establish that the physical altercation did not rise to a level that would justify Gaskin's reasonable belief that deadly force was required, as there was no threat of serious bodily harm when he used deadly force. To the extent Gaskin requests that we re-weigh the evidence, we may not do so. *See Commonwealth v. Rosario*, 307 A.3d 759, 765 (Pa. Super. 2023) ("we may not re-weigh the evidence and substitute our

judgment for that of the fact[ ]finder"). Therefore, Gaskin is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/3/2025