J-A15017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                  :           PENNSYLVANIA
                                  :
          v.                       :
                                  :
                                  :
MATTHEW RYAN STUART             :
                                  :
          Appellant          :     No. 1325 MDA 2023

Appeal from the Judgment of Sentence Entered August 23, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0004234-2022

BEFORE:  DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:               **FILED: SEPTEMBER 5, 2024**

Matthew Ryan Stuart ("Stuart") appeals from the judgment of sentence imposed following his convictions in the Lancaster County Court of Common Pleas ("trial court") of driving under the influence ("DUI"): general impairment/incapable of driving safely (third offense), and fleeing or attempting to elude a law enforcement officer.[1]  Stuart argues that the evidence was insufficient to support each conviction, and, alternatively, that the trial court abused its discretion by denying his challenge to the weight of the evidence supporting his convictions.  We affirm.

Around 10:00 p.m. on August 24, 2022, while traveling southbound in his police vehicle on Route 501 near the intersection of East Newport Road,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(a)(1), 3733(a).

Officer Christian Bean of Northern Lancaster County Regional Police Department passed a white Audi driven by Stuart traveling north. When the cars were almost "nose to nose," Stuart flashed his high beams approximately six times. N.T., 5/8/2023, at 93. According to Stuart, he did so to alert other motorists that police were up ahead. N.T., 5/9/2023, at 185. Officer Bean made a U-turn to follow Stuart's Audi and thereafter, the Audi turned right onto East Newport Road and sped up. N.T., 5/8/2021, at 95. Officer Bean had to accelerate to approximately sixty to seventy miles per hour to get close enough to the Audi to see its registration plate. *Id.*

Stuart turned the Audi onto Snyder Hill Road and then onto Colonial Crescent Drive, the street where his parents resided. N.T., 5/9/2023, at 120. Officer Bean activated his emergency lights and sirens and remained in pursuit of the Audi. *Id.* at 121. Stuart then increased the Audi's speed to approximately fifty to sixty miles per hour in a posted twenty-five mile per hour zone before turning into his parents' driveway. *Id.* at 120-21. Stuart traveled approximately .137 miles from the time Officer Bean activated his lights until he stopped in the driveway. *Id.* at 121.

Stuart exited the car from the driver's side, staggered, and grabbed the vehicle for support. N.T., 5/8/2023, at 96. Officer Bean ordered Stuart to get back into the vehicle, but Stuart did not comply. *Id.* at 96-97. Officer Bean approached Stuart with handcuffs, which Stuart resisted. *Id.* at 97. Officer

- 2 -

Bean took Stuart down to the ground where Stuart continued his resistance.[2] *Id.* at 97-98. After Officer Bean finally secured the handcuffs, Stuart refused to identify himself or provide his driver's license. *Id.* at 98-99. Stuart grabbed and scratched Officer Bean's hand during a pat down. *Id.* at 98. Stuart's father, who by then had come outside, provided Stuart's name and date of birth. *Id.* at 99.

Because Stuart was unsteady on his feet, slurred his words, and his eyes were red, glassy, and bloodshot, Officer Bean surmised that he was intoxicated. *Id.* Officer Bean did not administer a field sobriety test because Stuart was very agitated and uncooperative. *Id.* Stuart generally refused to answer questions but admitted that he had drank one beer an hour before. *Id.* at 100, 134. Officer Bean observed open containers of Mangorita, an alcoholic beverage, on the floor in front of the passenger seat in Stuart's car. *Id.* at 108-09. Based upon Stuart's unsteadiness, word slurring, appearance, admission to drinking alcohol, and open containers in the vehicle, Officer Bean determined that he had probable cause to arrest Stuart for being under the influence of alcohol while driving. *Id.* at 114.

Following an ambulance ride to the hospital, Officer Bean read the DL-26 form to Stuart. Stuart refused to consent to a blood draw or to sign the form, stating that he believed that he was below the legal limit and that he planned to fight the proceedings in court. *Id.* at 112. Police arrested Stuart,

---

[2] This struggle prompted Officer Bean to call an ambulance to the scene in accordance with police policy.

and the Commonwealth charged him with numerous crimes. Subsequently, the case proceeded to a jury trial.

During Officer Bean's testimony, the jury viewed portions of recordings from cameras in Officer Bean's patrol car and worn on his body. The recordings began thirty seconds prior to Officer Bean's activation of the emergency lights. Officer Bean testified that the recording captured him saying, "vehicle failing to yield," when the Audi accelerated instead of stopping. *Id.* at 105-06. Another video depicted Stuart appearing unsteady on his feet and tipping over after grabbing at the officer's hand during a search. *Id.* at 106. Finally, in a video clip of Stuart's ambulance ride, the jury heard Stuart tell an EMT that he had consumed two beers and a shot of Rumple Minze (an alcoholic liquor) three hours ago. *Id.* at 111, 137.

On cross examination, Officer Bean acknowledged that Stuart is diabetic, that medical staff at the hospital administered saline to lower Stuart's blood sugar level, that neither he nor others detected the smell of alcohol when interacting with Stuart, that Stuart told police that he was "schizophrenic," and that Stuart had bipolar disorder. *Id.* at 127, 133.

When Officer Mitchell Naumann arrived as back up, he heard yelling and arguing and observed Stuart in a very agitated state on the ground in handcuffs with Officer Bean standing next to him. *Id.* at 148-49. Officer Naumann asked Stuart if he had anything to drink. Stuart responded that he had a PBR (a brand of beer) at the Parkview Hotel earlier. *Id.* at 149. Officer Naumann observed and photographed three "Mangorita" cans, an 8%

alcoholic beverage, in the center console cupholder partially underneath a sweatshirt and on front passenger side floor of Stuart's car. *Id.* at 150-53. The cans were partially obscured in the photographs and Officer Naumann could not recall if the cans were open or closed. *Id.* The jury viewed short clips from Officer Naumann's body-worn camera. *Id.* at 154-67.

Stuart testified on his own behalf. Although he saw Officer Bean's patrol car when he passed it on Route 501, Stuart claimed that he did not notice the patrol car following him as he turned onto Newport Road, traveling approximately forty-five to fifty miles per hour. N.T., 5/9/2023, at 186-87. Stuart explained that he had started to feel strange twenty minutes earlier and was trying to get to his parents' home on Colonial Crescent Drive to address his high blood sugar. *Id.* at 187. Stuart wears a continuous glucose monitor in his arm that sends his blood sugar data to his cell phone, but Stuart claimed that he "knocked out" the monitor earlier that day by bumping his arm against a wall at his dentist's office while paying a bill. *Id.*

Because he was focused on getting home to administer his insulin, Stuart insisted that he did not notice the police sirens and lights until shortly before turning into his parents' driveway. *Id.* at 188, 195-96. When he got out of the vehicle, Stuart felt confused and was shaking, and he just wanted to get to his insulin. *Id.* at 189. Stuart denied resisting arrest once he was out of his vehicle in the driveway, claiming instead that Officer Bean had "jerked" him and that he had grabbed the other car for stability. *Id.* at 198-99. Stuart admitted to being noncompliant and using vulgar language. Stuart

was angry because Officer Bean was treating him "unjustly" and denying him access to his medication. *Id.* at 203. Stuart stated that he sustained several cuts and abrasions from being thrown to the ground. *Id.* at 204.

Stuart testified that he consumed one beer at a hotel about an hour before the stop. *Id.* at 205. About three to four hours before that, he drank two beers and a mixed drink. *Id.* From Stuart's perspective, these four drinks did not render him incapable of safely driving because he consumed them over time. *Id.* at 206. Stuart acknowledged that "certain bad things" may happen when a diabetic drinks alcohol, but that many diabetics have no problem managing their blood sugar while consuming alcohol. *Id.* at 205. According to Stuart, a normal blood sugar range is 70-99, but the hospital staff measured Stuart's blood sugar as 567. *Id.* at 204.

On cross examination, Stuart admitted that he never told the officers that he was diabetic because he was "not in the mood to share information with the officers." *Id.* at 217. The officers did not learn about Stuart's diabetes until his mother told them seven minutes into the stop. *Id.* Stuart admitted that he had asked the EMTs for a "gluc gun," which would have raised his insulin; that he told the EMTs that they were "full of shit" when they told him that a gluc gun was not what he needed; and that he repeatedly declined treatment from the EMTs for his diabetes. *Id.* at 218.

After hearing the above evidence, the jury found Stuart guilty of DUI and fleeing or attempting to elude a law enforcement officer. The jury found Stuart not guilty of disorderly conduct.

- 6 -

Following trial, Stuart filed a motion for judgment notwithstanding the verdict, which the trial court denied. On August 23, 2023, the trial court sentenced Stuart to thirty days to two years less one day of incarceration for the DUI conviction, followed by a consecutive sentence of two years' probation for the fleeing/attempting to elude a law enforcement officer.[3]

Stuart filed a timely notice of appeal. Both Stuart and the trial court complied with Pa.R.A.P. 1925. Stuart asks this Court to decide whether the jury's guilty verdicts for DUI and fleeing/attempting to elude a law enforcement officer were supported by sufficient evidence, and, alternatively, whether the jury's verdicts as to these crimes were against the weight of the evidence. **See** Stuart's Brief at 8.

## Sufficiency of the Evidence

We review Stuart's challenges to the sufficiency of the evidence supporting his convictions according to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth

---

[3] The Commonwealth also charged Stuart with three summary offenses, which the trial court adjudicated based upon incorporated testimony from the jury trial. The trial court found Stuart not guilty of failure to carry a license and restrictions on alcoholic beverages. The trial court found Stuart guilty of failing to drive at a safe speed and imposed a twenty-five dollar fine. Stuart does not challenge his conviction for this offense in this appeal.

need not preclude every possibility of innocence.  It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence.  The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.  Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Rosario*, 307 A.3d 759, 764-65 (Pa. Super. 2023).

DUI

To establish the crime of DUI general impairment/incapable of driving safely, the Commonwealth must prove that Stuart engaged in the following prohibited conduct:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1).

To prove that alcohol rendered Stuart incapable of safe driving, the Commonwealth had to show that the alcohol

substantially impaired the normal mental and physical faculties required to safely operate the vehicle.  Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions.  Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

*Commonwealth v. Gause*, 164 A.3d 532, 541 (Pa. Super. 2017) (en banc).

The statute "does not limit the type of evidence that the Commonwealth can proffer to prove its case," giving the Commonwealth latitude to prove impairment with evidence,

> including, but not limited to … the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol[;] slurred speech[; and blood alcohol level]. … The weight to be assigned these various types of evidence presents a question for the [factfinder], who may rely on his or her experience, common sense, and/or expert testimony.

*Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

Although Stuart admits that he drank alcohol prior to driving his vehicle, he nonetheless argues that the Commonwealth failed to prove that the alcohol impaired his normal mental and physical faculties to such a degree that he was incapable of safe driving. Stuart's Brief at 18. In support of his argument that he was not impaired, he emphasizes that he operated his vehicle's turn signals; did not weave on the road; and drove fast so he could get home to address his blood sugar. *See id.* at 19-20. Stuart insists that Officer Bean did not have an adequate opportunity to observe his balance and coordination because Officer Bean handcuffed him and took him to the ground within thirty seconds after he exited his vehicle and elected to forgo a field sobriety test. *Id.* at 20. Neither the officers nor the EMTs detected the odor of alcohol, which, in Stuart's opinion, corroborates his testimony that it had been several hours since he had imbibed alcoholic beverages. *See id.* at 20-21. Stuart

argues that because his medical conditions (schizophrenia, bipolar disorder, and diabetes) were "consistent" with his agitated state, the evidence as a whole was insufficient to prove that he was impaired by alcohol to the point that he could not drive safely. *See id.* at 21-22 (citing *Gause*, 164 A.3d at 532).

Stuart's argument would require us to view certain facts from his perspective, but for purposes of a sufficiency challenge, we must view the evidence in the light most favorable to the Commonwealth. *See Rosario*, 307 A.3d at 764-65. When viewed pursuant to the correct standard, the evidence was sufficient to prove that alcohol substantially impaired Stuart's mental and physical faculties. Stuart admitted to drinking. He had open Mangorita cans strewn about his car, including in the center console's cupholder. He exercised poor judgment, such as flashing his headlights at the patrol car, driving at an excessive speed, and displaying belligerent behavior towards the officer. He exhibited common signs of intoxication such as stumbling, slurred speech, bloodshot eyes, and agitation. Stuart was uncooperative with Officer Bean. He failed to notify the officers of his concern about his blood sugar and accessing his insulin, and he refused treatment by the EMTs. He also refused to provide a blood sample after the reading of the DL-26 form.

To accept Stuart's argument, this Court would have to re-evaluate witness credibility and re-weigh the facts. This we cannot do. *See Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019) (noting that the

jury is the factfinder and sole arbiter of the witnesses' credibility). It was up to the jury to decide whether to believe the police officers' version of the incident or Stuart's counternarrative. It also was within the jury's province to weigh the countervailing facts of Stuart's elevated blood sugar, use of turn signals, and the absence of an odor of alcohol against the facts supporting the Commonwealth's case. The Commonwealth did not have to eliminate all possibilities of innocence to meet its burden. **See Commonwealth v. Rudolph**, 262, A.3d 574, 578 (Pa. Super. 2021) ("Any doubts regarding a defendant's guilt may be resolved by the [factfinder] unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.").

Furthermore, Stuart's case is not akin to **Gause** because Stuart exhibited multiple common signs of alcohol impairment. **See Segida**, 985 A.2d at 879. In **Gause**, on the other hand, Gause's inconsistent performance on a sobriety test, which officers recognized may have been caused by Gause's leg injury, was the only sign that Gause may have been impaired by alcohol, and was not sufficient, standing alone, to prove beyond a reasonable doubt that alcohol impaired Gause to such a degree that he was incapable of safe driving. **See Gause**, 164 A.3d at 541–42 (noting that Gause pulled over immediately after the police signaled for him to do so, readily cooperated with police, did not slur his speech, was able to stand without support, and did not exhibit any other typical indicators of alcohol impairment). Therefore, the evidence was sufficient to support Stuart's DUI conviction.

### Fleeing/Eluding Law Enforcement

To prove that Stuart fled or eluded law enforcement, the Commonwealth had to prove that Stuart engaged in the following conduct:

> Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

75 Pa.C.S. § 3733(a).

Stuart argues that the evidence was insufficient to establish that he fled, eluded, or willfully failed to stop his vehicle upon activation of Officer Bean's lights and sirens. *See* Stuart's Brief at 26-27. He contends that Officer Bean first activated his lights when Stuart was already on the road upon which his parents lived; that Stuart traveled .137 miles over about ten to fifteen seconds from the light activation until Stuart stopped in his parents' driveway; that Stuart used his turn signal to indicate to the officer where he was going; and that Stuart did not attempt to run away or lead the officer on a high-speed chase. *See id.* at 26-27.

Stuart's argument is unavailing. There is no distance provision in the statute, and, as the trial court found, "the officer activated his lights and siren and the jury was able to observe [Stuart] accelerate away from the officer, thus satisfying the elements of the offense." Trial Court Opinion, 10/30/23, at 13-14. Therefore, the evidence established Stuart fled or eluded law enforcement.

Because the evidence was sufficient to support both convictions, no relief is due.

## Weight of the Evidence

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks and citations omitted).

Our standard of review for weight of the evidence claims, however, differs from that of the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict

was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

## DUI

Stuart acknowledges that a trial court could, in isolation, view his agitated speech, stumbling upon exiting from his vehicle, and alcohol containers in his vehicle as sufficient evidence of that he was impaired by alcohol while operating the vehicle. Stuart's Brief at 22-25. However, Stuart insists, because he suffers from medical conditions that were consistent with the alleged signs of impairment, no one smelled the odor of alcohol on him, and he testified that he had not imbibed alcohol in three to four hours, it was far more logical that his medical conditions caused his behavior and not alcohol. *Id.* at 23-25. To ignore these facts "of such greater weight," Stuart argues, is a denial of justice. *Id.* at 23 (citing ***Commonwealth v. Rivera***, 983 A.2d 1211 (Pa. 2009)).

As noted above, this Court does not assess a challenge to the weight of the evidence with the same standard used by the trial court. Instead, we review the trial court's exercise of discretion. The trial court opined that while it was possible

the jury could have found that [Stuart's] medical condition was the reason for [Stuart's] behavior and symptoms, the jury rejected this defense. The jury easily could have inferred that [Stuart], knowing he had a [medical] condition and knowing he did not have his monitor for his diabetes, had imbibed alcohol when his medical condition made him more vulnerable to the effects of alcohol, and that he confabulated the story only after he was arrested and charged.

- 14 -

Trial Court Opinion, 10/30/2023, at 12.

We agree with the trial court's assessment. The jurors were entitled to rely upon their "experience, common sense, and/or expert testimony," to assign weight to the evidence offered to prove impairment by alcohol. *See Segida*, 985 A.2d at 879. The evidence that Stuart's blood sugar and/or other diagnoses may have caused an impairment of his faculties, and that his behavior was not alcohol-related, largely rested upon his testimony, which the jury was free to accept or reject. Further, although the officers may not have detected alcohol odor upon Stuart's breath, the factfinder was free to weigh the totality of the evidence in finding that the verdict was supported by the competent evidence; we decline his invitation to reweigh the evidence. *See Commonwealth v. Gilliam*, 249 A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of factfinder and reweigh the evidence in his favor). We therefore conclude that the trial court did not abuse its discretion in rejecting Stuart's weight-of-the-evidence challenge to his DUI conviction.

### Fleeing/Eluding Law Enforcement

Lastly, Stuart argues that the evidence supporting his fleeing/eluding law enforcement conviction was against the weight of the verdict. Stuart's Brief at 28-30. Once again, Stuart relies upon his medical conditions, arguing

the fact that he did not stop was outweighed by his medical emergency, as he was focused upon arriving home to address his blood sugar and did not notice Officer Bean's lights until he was about to pull into his parents' driveway. *Id.* at 29-30.

Once again, the trial court reasoned that the jury was free to disbelieve Stuart's testimony, and no relief was due. *See* Trial Court Opinion, 10/30/2023, at 14. We agree. The trial court did not abuse its discretion by refusing to intrude upon the jury's credibility determinations. *See Juray*, 275 A.3d at 1046. No relief is due.

## Conclusion

Because there was sufficient evidence to support each of Stuart's convictions and the trial court did not abuse its discretion in rejecting Stuart's challenges to the weight of the evidence, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/5/2024