J-S35006-24

2025 PA Super 6

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JONAH RAHEEM WILLIAMSON :
:
Appellant : No. 79 MDA 2024

Appeal from the Judgment of Sentence Entered December 19, 2023
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0000014-2022

BEFORE: PANELLA, P.J.E., MURRAY, J., and KING, J.

OPINION BY PANELLA, P.J.E.: **FILED: JANUARY 10, 2025**

Jonah Raheem Williamson ("Williamson") appeals from the judgment of

sentence, an aggregate period of 9 ½ to 19 years' imprisonment, imposed by

the Court of Common Pleas of Cumberland County after a jury convicted him

of recklessly endangering another person ("REAP")[1] and aggravated assault:

intentionally, knowingly or recklessly causing serious bodily injury.[2] On

appeal, Williamson challenges (1) the admission of recorded prison phone calls

into evidence, (2) the weight of the evidence on the count of aggravated

assault, (3) the sufficiency of the evidence to prove aggravated assault, and

(4) the application of the Deadly Weapon Enhancement/Used Matrix[3] to the

_____

[1] 18 Pa.C.S.A. § 2705.

[2] 18 Pa.C.S.A. § 2702(a)(1).

[3] 204 Pa.Code § 303.17(b).

sentence imposed for his aggravated assault conviction. After careful review,

we affirm.

The trial court summarized the factual and procedural history underlying

Williamson's conviction and pertaining to this appeal as follows:

> As the result of an incident on the evening of Friday, December 17, 2021, in which [Williamson] allegedly stabbed a woman in a room at a hotel in Cumberland County, Pennsylvania, [Williamson] was charged with various offenses, including recklessly endangering another person and aggravated assault in the form of attempting to cause or intentionally or knowingly causing bodily injury with a deadly weapon. By way of an amendment to the subsequent information, a charge of aggravated assault in the form of attempting to cause or intentionally, knowingly or recklessly causing serious bodily injury was added to the charges.
>
> At [Williamson's] trial, which was held on May 8-11, 2023, the Commonwealth presented the testimony of 14 witnesses, and secured the admission of 32 exhibits. [Williamson] presented the testimony of two witnesses, and secured the admission of one exhibit.
>
> In the Commonwealth's case-in-chief, [Victim], Likitia Dotson, testified that she had dated [Williamson] from 2019 until 2021, that on December 17, 2021, she and [Williamson] were sharing a room at a Rodeway Inn, that she recalled that at some point she was in the rain outside the building with injuries and "knock[ing] on somebody's door," that she recalled talking "briefly" to a paramedic, in connection with the injuries, which she described as "kind of just stab wounds," and that she remembered being in an ambulance.
>
> However, in response to the question, "Who stabbed you," she replied "Nobody stabbed me," and she claimed that she did not "remember much of that night or that day," attributing this lapse to the passage of two years and alcoholism. She also acknowledged the view that [Williamson] had been overcharged.
>
> The night clerk at the Rodeway Inn in Wormleysburg Borough, Cumberland County, testified that on the night of

December 17, 2021, a woman came to the front desk bleeding, crying, and very scared, and told him to call 911 because she had been stabbed. There was "blood everywhere," according to his testimony.

When asked whether she said who stabbed her, the clerk stated, "[s]he [was] like screaming my boyfriend, my boyfriend, my boyfriend. So, yeah, saying he did. He did. My boyfriend did." The clerk called 911, and the injured woman participated in the call reporting the emergency, according to his testimony.

Trial Court Opinion, 3/15/24, at 2-4 (footnotes omitted).

Officer Brian Ebersole from the East Pennsboro Township Police Department and Affiant, West Shore Regional Police Department officer Nikki Sheaffer, testified similarly that when they responded to the scene at approximate 11:45 p.m., Likitia Dotson was in the lobby holding towels on her neck; the towels were soaked with blood. Victim appeared fatigued and scared because Williamson had fled, and his location was unknown. Officer Sheaffer added that surveillance video at the hotel showed Victim and Williamson "grappling," to which Williamson objected, stating the officer neither knows him nor saw him that night. Williamson fled the scene, and police were unable to recover the knife.

Officer Grant Cox from the West Shore Regional Police Department responded to the scene of the stabbing and interviewed Victim at Holy Spirit Hospital, where she had been transported after the incident. The transcript from Officer Cox's body-camera footage captured during the interview included Victim's description of the knife used by Williamson in the attack. Victim described the knife as curved with an army handle, and she stated

Williamson had purchased it about two days prior. Victim stated Williamson tripped, pushed, and punched her before pulling the knife out of his pants and stabbing her.

Officer Charles Stefanowicz from the Amtrak Police Department testified that Williamson was eventually located on a train scheduled for departure to New York City at 9:20 a.m. Officer Brandon Stolley of the West Shore Regional Police Department testified to reading Williamson his Miranda warnings, which Williamson denied remembering.

According to Dr. Kinnard Leatham, the critical care trauma surgeon on call at Holy Spirit Hospital that evening, Victim arrived at the hospital as a Level One Trauma I due to her serious injury and multiple stab wounds to her finger, bicep, and neck. Dr. Leatham testified that knife wounds to the neck were particularly serious and could have caused blood loss leading to death.

The trial court further explained the testimony regarding the audio recordings used by the Commonwealth at trial:

> During the course of the trial, a recurrent evidentiary issue involved a series of audio recordings of phone calls initiated within a few days of the incident from the prison where [Williamson] was being held pending a preliminary hearing and trial. These purportedly consisted of conversations between [Williamson] and [V]ictim and, according to the Commonwealth, evidenced "a plan or scheme between [Williamson] and [V]ictim . . . pertaining to how she would essentially relate the events in the future." Several witnesses called by the Commonwealth served to authenticate the recordings as inmate-generated phone calls in which the participants were [Williamson] and [Victim].
>
> In some conversations the parties allegedly attempted to disguise the identity of the female voice by referencing [Victim] in

> the third person, and in this regard an attempt by [Victim] to disclose to [Williamson] her rendition to prosecutors of an exculpatory version of the incident could be inferred[.]

Trial Court Opinion, 3/15/24, at 9-10. Williamson and Victim also discussed the wound to Victim's finger on the recorded calls.

Defense counsel noted his objection to the recordings of Victim's statements as hearsay and lacking authentication. The trial court overruled the objection. During his closing argument, the prosecutor stated, in pertinent part, with respect to the subject of "serious bodily injury," that stabbing a victim in the neck was a serious bodily injury because there was testimony that this created a substantial risk of death. The prosecutor also argued to the jury that the loss of feeling in a finger is a protracted loss or impairment of the function of any bodily member or organ. Defense counsel again objected on the basis of hearsay, and the prosecutor responded that even if Victim's statement were hearsay, it was nonetheless properly admitted pursuant to hearsay exceptions, including as a statement related to medical diagnosis or as a statement of the declarant's then-existing sensory or physical condition.

The jury convicted Williamson of REAP and aggravated assault: intentionally, knowingly, or recklessly causing serious bodily injury. The jury found Williamson not guilty of aggravated assault: attempting to cause or intentionally or knowingly causing bodily injury with a deadly weapon.[4]

---

[4] 18 Pa.C.S.A. § 2702(a)(4).

At sentencing, the court "found by a preponderance of the evidence that [Williamson] had used a deadly weapon in the commission of the criminal conduct for which he was being sentenced, and accordingly applied the 'deadly weapon enhancement' provided for in Pennsylvania's sentencing guidelines in imposing sentence." Trial Court Opinion, 3/15/24, at 13. The trial court sentenced Williamson to an aggregate term of 9 ½ to 19 years' incarceration. Williamson filed a post-sentence motion challenging the admission of Victim's statement concerning the injury to her finger and the sufficiency of the evidence to prove serious bodily injury for the aggravated assault charge. At argument on the motion, defense counsel also challenged the weight of the evidence. The court denied the motion. Williamson timely appealed and filed a court-ordered Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b).

On appeal, Williamson raises the following issues for our review:

I. Whether the court erred by allowing the Commonwealth to enter into evidence recorded prison phone calls between the defendant, Jonah Williamson, and [Victim], Likita Dotson where the statements of [Victim] on the recorded calls were hearsay, and the Commonwealth did not offer sufficient exception to the hearsay rules to have the statements omitted?

II. Whether the evidence was insufficient to prove beyond a reasonable doubt that [Williamson] was guilty of aggravated assault where the Commonwealth failed to prove that:

A. [Williamson] intentionally, knowingly, or recklessly caused bodily injury to Ms. Dotson; or

B. That the injury suffered by [Victim] represented a serious bodily injury (substantial risk of death, serious permanent disfigurement, or protracted loss or

impairment of the function of any bodily member or organ)?

III. Whether the verdict was against the weight of the evidence so as to shock one's sense of justice where:

A. The improper admission of the prison phone calls provided unfair weight and credibility to the former statements of [Victim], especially where her live testimony was fully contradictory; and

B. Hearsay statements made by [Victim] regarding the extent of her injury were contradicted by testimony provided by the Commonwealth's medical expert?

IV. Whether, at sentencing, the court erred in applying the deadly weapon used enhancement where the jury acquitted [Williamson] of the count of aggravated assault with a deadly weapon?

Appellant's Brief, at 5-6 (extraneous capitalization and suggested answers omitted; issues renumbered for ease of disposition).

We first address Williamson's challenge to the trial court's admission of the recorded prison phone calls into evidence. Williamson argues the recordings were inadmissible because the statements made by Victim on the phone calls were hearsay, and the Commonwealth failed to offer a sufficient exception to the hearsay rules to have the statements admitted. *See* Appellant's Brief, at 22.

We review a challenge to the trial court's evidentiary rulings for an abuse of discretion. *See Commonwealth v. Harrington*, 262 A.3d 639, 644 (Pa. Super. 2021). Accordingly, our standard and scope of review is limited:

The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous. Where the evidentiary question involves a discretionary ruling, our scope of review is plenary.

*Commonwealth v. Mollett*, 5 A.3d 291, 304 (Pa. Super. 2010) (citations omitted; paragraphing provided). Further, we will affirm a trial court's evidentiary ruling "if the result is correct on any ground, without regard to the grounds on which the trial court relied." *Commonwealth v. Cassidy*, 462 A.2d 270, 272 (Pa. Super. 1983) (citations omitted).

Williamson argues the recorded calls were offered for the truth of the matter asserted, especially with respect to the conversation concerning Victim's finger. *See* Appellant's Brief, at 23-24. Williamson further argues the statements were not admissible because "the statements directly reference an unknown third-party's physical condition," and "the Commonwealth offered no evidence of record to prove who the callers were referring to when they spoke of third-party individuals." *See* Appellant's Brief, at 27 (emphasis omitted). The Commonwealth counters the recordings were used only to support their theory of the case, namely that Williamson and Victim conspired to fabricate a story that would absolve Wiliamson of guilt, and that, in any event, the recordings were admissible as exceptions to the rule against hearsay. *See* Appellee's Brief at 14.

- 8 -

We agree with Williamson's contention that the recordings were offered to prove the truth of the matter asserted, especially when considering the prosecution's use of the conversations to prove serious bodily injury in its closing argument. **See** N.T. Jury Trial Day 3, at 137-38. However, we also agree with the Commonwealth's contention that the trial court did not abuse its discretion by admitting the recordings into evidence as exceptions to the rule against hearsay.

"Hearsay" is an out of court statement offered into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801. Generally, hearsay is inadmissible except as provided by the Pennsylvania Rules of Evidence, by other rules promulgated by the Pennsylvania Supreme Court, or by state statute. Pa.R.E. 802. "When an extrajudicial statement is offered for a purpose apart from proving the truth of its contents, it is not hearsay and is not excluded under the hearsay rule." **Cassidy**, 462 A.2d at 272.

Under Rule 803(3), "[a] statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)," is admissible as an exception to the rule against hearsay, regardless of whether the declarant is available to testify as a witness. Pa.R.E. 803(3).

Additionally, under Rule 803.1(4), "[a] prior statement by a declarant-witness who testifies to an inability to remember the subject matter of the statement" may be admissible as an exception to the rule against hearsay.

Pa.R.E. 803.1(4). "The purpose of this hearsay exception is to protect against the 'turncoat witness' who once provided a statement, but now seeks to deprive the use of this evidence at trial." Pa.R.E. 803.1(4), *Comment*.

The trial court addressed this challenge as follows:

> With respect to the admission of out-of-court statements of [Victim] and, recorded statements to persons such as Officer Cox, providing details as to [Williamson's] attack upon her, including his use of the knife in the incident, . . . were admissible for the truth of the statements pursuant to Pennsylvania Rule of Evidence 803.1(4). . . . Out-of-court statements of [Victim] in the prison phone calls regarding the extent of the injury to her finger were admissible for the truth of the statements pursuant to Pennsylvania Rule of Evidence 803(3). . . .
>
> Out-of-court statements of [Victim] during the prison phone calls referencing a false narrative as to the event at issue were not offered to prove the truth of the statements but rather to show an attempt by the parties to conceal the nature of [Williamson's] conduct. As such, they were not hearsay and were otherwise admissible evidence tending to support the Commonwealth's theory of the case. For the foregoing reasons, to the extent that [Williamson's] appeal is premised upon errors in the admission into evidence of [Victim's] out-of-court statements, the appeal is believed to be without merit.

Trial Court Opinion, 3/15/24, at 17-18.

Initially, we note that the trial court properly admitted the prison phone calls as prior statements of a declarant-witness who claims an inability to remember the subject matter pursuant to Rule 803.1(4). At trial, Victim testified she could not remember the details of the incident and further indicated that although she had sustained stab wounds, "nobody stabbed [her]." N.T. Jury Trial, Day 1 at 94. Contrary to this testimony, the context of the conversations concerned the incident in question; more specifically, the

conversations showed how the Victim planned to relay the events in the future to exculpate Williamson. *See* N.T. Jury Trial Day 3, at 40 (Commonwealth Exhibit 32 admitted).

Although the recordings contained out of court statements which occurred prior to trial, the Commonwealth authenticated the calls and showed that the recordings were accurate representations of Williamson's conversations with [Victim]. *See* N.T. Jury Trial Day 2, at 171-75, 180-84 (Theodore Keppley, intelligence sergeant with Cumberland County Prison, testified that the date, time, and content of an inmate-generated phone call is recorded and preserved in the prison's phone call system database and the PIN number associated with the recordings in question belonged to Williamson); *see* N.T. Jury Trial Day 3, at 40 (prison phone calls admitted as Commonwealth Exhibit 32). Although the parties attempted to conceal Victim's identity on the phone calls, witness testimony confirmed the voices on the calls and the associated PIN and phone number belonged to Williamson and Victim, respectively. *See* N.T. Jury Trial Day 2, at 184, 187-88 (Sergeant Keppley and Officer Stolley testified to recognizing the male voice on all phone calls as Williamson's); *see* N.T. Jury Trial Day 3, at 33-34 (victim advocate, Sarah Junkins, recited the phone number Victim called her from and indicated she recognized Victim's voice on all phone calls); *see id.* at 38 (Officer Sheaffer identified Victim's voice on all phone calls).

As previously stated, the context of the conversations concerned the incident in question, including Victim's present physical condition, and more specifically, how Victim planned to relay the events in the future to exculpate Williamson. *See* N.T. Jury Trial Day 3, at 40 (Commonwealth Exhibit 32 admitted). The jury, as the finder of fact, was properly positioned to make any credibility determinations and weigh the evidence based on Victim's testimony, which contradicted much of the other evidence presented by the Commonwealth, including testimony from other witnesses. ***See Commonwealth v. Miller***, 172 A.3d 632, 642 (Pa. Super. 2017) ("Resolving contradictory testimony and questions of credibility are matters for the finder of fact.") (citation omitted). Further, the jury was free to draw its own conclusions about who the parties to the conversation were referring to, based upon the evidence before it.

Therefore, upon our review of the record, we do not find an abuse of discretion by the trial court in admitting the recordings. We therefore conclude that Williamson's first issue lacks merit.

We next address Williamson's sufficiency of the evidence challenge. We apply the following standard of review to a sufficiency of evidence claim presented in a motion for judgment of acquittal:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to

human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. James*, 297 A.3d 755, 764 (Pa. Super. 2023) (citation omitted). Furthermore,

[t]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Rosario*, 307 A.3d 759, 765 (Pa. Super. 2023) (citation omitted). "Whether evidence was properly admitted does not factor into our analysis, as sufficiency is not determined upon a diminished record." *Commonwealth v. Bowens*, 265 A.3d 730, 741 (Pa. Super. 2021) (citation and emphasis omitted).

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "When a victim

actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm." ***Commonwealth v. Burton***, 2 A.3d 598, 602 (Pa. Super. 2010). In such cases:

> The Commonwealth need only prove the defendant acted recklessly under circumstances manifesting an extreme indifference to the value of human life. For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue.

***Commonwealth v. Patrick***, 933 A.2d 1043, 1046 (Pa. Super. 2007) (citations and emphasis omitted).

On its verdict sheet, the jury indicated it found Williamson guilty of aggravated assault based on the theory that he intentionally, knowingly, or recklessly caused serious bodily injury to Victim. ***See*** Verdict Slips, 5/11/23, at 4. Williamson first argues the evidence was insufficient to support the jury's finding because the Commonwealth failed to prove, beyond a reasonable doubt, that during the altercation he either had the specific intent to cause serious bodily injury or "held any awareness that it was practically certain that his acts would cause the result which it did," or that his conduct amounted to "the functional equivalent of a murder in which, for some reason, death fails to occur." ***See*** Appellant's Brief, at 43. Williamson further argues the evidence was insufficient to support the jury's verdict because the Commonwealth failed to prove Victim suffered a serious bodily injury. ***See*** Appellant's Brief, at 46-47.

The trial court addressed this challenge as follows:

> With specific reference to the sufficiency, and weight, of the evidence as it related to proof of the element of serious bodily injury implicated by the jury's aggravated assault guilty verdict, it may be noted preliminarily that, as to the sufficiency, of the evidence, the evidentiary review is not to be conducted on the basis on a diminished record. Furthermore, in the view of the court, stab wounds to parts of the body containing vital blood vessels, requiring a tourniquet at the scene of the crime and medical intervention at a hospital, and the loss of use and feeling of a finger, qualified as injuries that "created a substantial risk of death or which caused serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."
>
> In this regard, the opinion of the critical care trauma surgeon who responded to [V]ictim's arrival at the hospital with a Trauma I classification that she had "no serious injury" did not constitute a risk assessment and, in addition, must be placed in the context of medical intervention that had brought her loss of blood under control. Nor was the jury required to credit [Williamson's] prognosis, based on his understanding of nerve regeneration, of an eventual full recovery of [Victim] from the damage to her hand.

Trial Court Opinion, 3/15/24 at 18-19 (brackets omitted). We agree.

Contrary to Williamson's assertion, the Commonwealth was not required to prove that he intentionally or knowingly caused serious bodily injury to Victim during the altercation to sustain a conviction for aggravated assault because here, the jury determined Victim had sustained serious bodily injury. **See Burton**, 2 A.3d at 602. Accordingly, the Commonwealth could satisfy the statute's *mens rea* requirement by proving recklessness, specifically, that during the altercation, Williamson acted under circumstances which almost assured serious injury or death would result. **See Patrick**, 933 A.2d at 1046.

Williamson contends the evidence considered by the jury was insufficient to prove any of the statute's intent requirements because "Dr. Leatham's testimony explicitly ruled out the possibility of death, considering the injuries that [Victim] actually sustained." Appellant's Brief, at 43. However, the record belies this contention.

The Commonwealth presented the testimony of 14 witnesses to the jury, some of whom described the wounds Victim sustained, and the blood Victim lost following the altercation. **See** N.T. Jury Trial, Day 1 at 84, 119-20; **see** N.T. Jury Trial, Day 2 at 17-19, 107-13. Additionally, the jury considered a transcript and recording of the 9-1-1 call, images of surveillance footage from the Rodeway Inn, footage and transcripts from officers' body-cameras showing Victim immediately after the incident and in the hospital where she was treated, the medical record from the hospital where Victim was treated, and photos of the stab wounds on Victim's hand, bicep, and neck. **See** N.T. Jury Trial, Day 1, at 87-88, 100-02, 121-22; **see** N.T. Jury Trial, Day 2, at 45, 89-90, 106. As stated above, Dr. Leatham testified that the knife wounds to the neck were particularly serious and could have caused blood loss leading to death.

Accordingly, the record was replete with evidence for the jury to consider when determining whether Williamson acted recklessly by stabbing Victim in her neck, bicep, and hand, and whether the stab wounds constituted serious bodily injury. It was within the province of the jury "to believe all, part,

or none of the evidence." **Rosario**, 307 A.3d at 765. Therefore, upon reviewing the record and viewing the evidence in the light most favorable to the Commonwealth, we conclude the trial court did not err in finding the evidence sufficient to sustain Williamson's aggravated assault conviction.

We next address Williamson's weight of the evidence challenge. Williamson alleges the prison phone calls, "provided unfair weight and credibility to the former statements of [Victim], especially where her live testimony was fully contradictory," and further argues the trial court "abused its discretion in upholding the verdict where the jury found sufficient evidence to constitute serious bodily injury, despite direct testimony that no major injuries were sustained." Appellant's Brief, at 30 (extraneous capitalization omitted). Further, Williamson claims the trial court abused its discretion in upholding the verdict because "the only evidence the jury could have relied on in determining that [Victim] suffered a serious bodily injury was so unreliable and contradictory as to render the verdict a product of pure conjecture, shocking one's sense of justice and warranting a new trial." **Id.** at 37-38. We disagree.

Our standard of review in addressing weight of the evidence claims is whether the trial court has exercised an abuse of discretion by overriding or misapplying the law or rendering a judgment that is "manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Rogers**, 259 A.3d 539, 541 (Pa. Super.

2021). "Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence." *Id.* (emphasis omitted). "Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion." *Commonwealth v. Rodriguez*, 174 A.3d 1130, 1139 (Pa. Super. 2017) (citation omitted).

"Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is or is not against the weight of the evidence." *Miller*, 172 A.3d at 643 (citation and brackets omitted). Accordingly, "for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague, and uncertain that the verdict shocks the conscience of the court." *Rodriguez*, 174 A.3d at 1140 (citation and quotation marks omitted).

Williamson's challenge to the weight of the evidence is without merit, as his arguments conflate our Court's standard of review for a weight of the evidence challenge with that of the trial court. Essentially, Williamson takes issue with the credibility determinations made by the jury, how the jury resolved contradictory testimony, and how the jury weighed the evidence presented at trial. In advancing this argument, Williamson "seems to believe that we can substitute our judgment on whether the guilty [verdict] shocked

the trial court's conscience for the trial court's conclusion that [it] did not. Our deferential standard of review does not permit this." **Rogers**, 259 A.3d at 541. As previously stated, the Commonwealth presented more than sufficient evidence to support Williamson's conviction, and Williamson failed to demonstrate that the trial court "overrode the law; made a manifestly unreasonable decision; or was motivated by bias, prejudice, or ill will." **Rogers**, 259 A.3d at 542. Therefore, we discern no abuse of discretion and conclude Willamson's weight of the evidence challenge must fail.

Finally, Williamson challenges the trial court's application of the deadly weapon used enhancement, which constitutes a challenge to the discretionary aspects of sentencing. **See** 204 Pa. Code § 303.17(b); **Commonwealth v. Tavarez**, 174 A.3d 7, 10-11 (Pa. Super. 2017).

> An appeal from the discretionary aspects of sentencing is not guaranteed as a matter of right. Before addressing such a challenge, we must first determine: (1) whether the appeal is timely; (2) whether the appellant preserved his or her issue; (3) whether the appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the Sentencing Code.

**Tavarez**, 174 A.2d at 10. (formatting altered; citations and brackets omitted).

"A substantial question is raised where an appellant alleges [his] sentence is excessive due to the sentencing court's error in applying the deadly weapon enhancement." **Commonwealth v. Kneller**, 999 A.2d 608, 614 (Pa. Super. 2010) (citation omitted).

Here, Williamson filed a timely notice of appeal, preserved his issue by filing a timely post-sentence motion to modify his sentence, included a concise statement of reasons relied upon with respect to the discretionary aspects of the sentence in his brief, and raised a substantial question as to whether his sentence is appropriate by alleging the trial court improperly applied the deadly weapon enhancement. *See* Appellant's Brief, at 18-21. Accordingly, we will review the merits of Williamson's sentencing claim. *See Tavarez*, 174 A.3d at 10.

> We analyze the sentencing court's decision under an abuse of discretion standard. [*See* 42 Pa.C.S. § 9781]. …
>
> * * *
>
> In addition, we consider:
>
> > (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
> >
> > (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
> >
> > (3) The findings upon which the sentence was based.
> >
> > (4) The guidelines promulgated by the commission.
>
> 42 Pa.C.S. § 9781(d).

*Commonwealth v. Smith*, 151 A.3d 1100, 1104 (Pa. Super. 2016) (citations and quotation marks omitted).

Under Pennsylvania's Sentencing Guidelines, "[t]he Deadly Weapon Enhancement shall apply to each conviction offense for which a deadly weapon

is possessed or used." 204 Pa. Code § 303.10(a)(4). "The trial court may not disregard an applicable enhancement when determining the appropriate sentencing ranges." *Tavarez*, 174 A.3d at 10 (citation omitted). An offender used a deadly weapon if he employed any of the following in a way that threatened or injured another individual during his commission of the offense:

(i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa. Code § 303.10(a)(2)(i)-(iii). This Court has previously recognized that "guns, knives, and other clearly offensive weapons constitute the most obvious and commonly encountered forms of deadly weapons." *Commonwealth v. Raybuck*, 915 A.2d 125, 128 (Pa. Super. 2006) (citations omitted). Accordingly, the record must show, by a preponderance of the evidence, "that the defendant used the weapon to threaten or injure the victim while committing the particular offense." *See* 204 Pa. Code § 303.10(a)(2); *Tavarez*, 174 A.3d at 11 (citations omitted); *Commonwealth v. McKeithan*, 504 A.2d 294, 298-99 (Pa. Super. 1986) (standard of proof governing applicability of the deadly weapon enhancement is preponderance of the evidence). Importantly, whether the deadly weapon at issue was ultimately found is not dispositive to a sentencing court's application of the deadly weapon enhancement. *See McKeithan*, 504 A.2d at 299 ("The fact

that the device or instrumentality employed by appellant in committing the aggravated assault was fortuitously not seen or found will not allow appellant to escape the application of the weapon enhancement to his sentence.").

Williamson maintains the trial court erred by applying the deadly weapon used enhancement because he was acquitted by the jury on the count of aggravated assault with a deadly weapon. *See* Appellant's Brief, at 48. While Williamson acknowledges the standard for applying the sentence enhancement is lower than that considered by the jury in finding guilt beyond a reasonable doubt, he argues "the evidence was insufficient to demonstrate that [he] possessed or used a deadly weapon, let alone that one existed," when "no deadly weapon was ever discovered." Appellant's Brief, at 48 (extraneous capitalization omitted). We disagree.

The trial court reasoned its application of the deadly weapon enhancement was justified because it found, by a preponderance of the evidence, that Williamson "possessed a deadly weapon during the commission of the criminal activity in question, in the form of a device, implement, or instrumentality designed as a weapon or capable of producing serious bodily injury, which he intended to use to threaten or injure another individual." Trial Court Opinion, 3/15/24, at 19 (internal quotation marks, brackets, and ellipses omitted). Specifically, the trial court pointed to evidence of Williamson's "employment of an army-handle knife in the attack upon [V]ictim, his infliction of three stab wounds in the course of the event,

including one to the neck, [V]ictim's need for medical intervention in the emergency room of a hospital, and testimony of the hospital's critical care trauma surgeon as to the location of major blood vessels in the body." *Id.* The court further noted, "[t]he fact that the jury may not have reached the same result as to the use of a deadly weapon when employing a more stringent standard of proof is not dispositive of the issue." *Id.*

We discern no abuse of discretion. First, as Williamson concedes, a sentencing court's standard for applying the sentence enhancement is different and lower than that considered by the jury in finding guilt beyond a reasonable doubt. *See McKeithan*, 504 A.2d at 298-99. Second, to sustain a conviction for aggravated assault with a deadly weapon, the Commonwealth must prove, beyond a reasonable doubt, that the defendant "attempts to cause or intentionally or knowingly causes bodily injury to another *with a deadly weapon*," thereby requiring proof of a different *mens rea* and a particular mode of causing bodily injury. 18 Pa.C.S.A. § 2702(a)(4)(emphasis added). Meanwhile, the Commonwealth can sustain a conviction for aggravated assault by proving a defendant recklessly caused serious bodily injury to another. *See* 18 Pa.C.S.A. § 2702(a)(1). Therefore, the fact that the jury found Williamson guilty of aggravated assault, but not guilty of aggravated assault with a deadly weapon, does not necessarily mean the jury concluded Williams did not use the knife to commit the offense, where the aggravated assault statute imposes the less stringent *mens rea* of

recklessness and does not preclude finding a deadly weapon was used to cause serious bodily injury.

Although a knife was ultimately not recovered by law enforcement, as noted previously, there was ample evidence to suggest Williamson used a knife to stab Victim. Immediately after the altercation, Victim informed the Rodeway Inn's night clerk that she had been stabbed with a knife by her boyfriend. **See** N.T. Jury Trial Day 1, at 84-85. Additionally, Officer Cox's body-camera footage depicted his interview with Victim at the hospital, in which she described the knife used to inflict the stab wounds, including what it looked like, when and where Williamson acquired it, and where on his person he pulled it from during the altercation. **See** Commonwealth's Exhibit 26, lines 299-310 and 529-39.

Based on the foregoing, we conclude the trial court did not abuse its discretion in finding, by a preponderance of the evidence, that Williamson used a knife to inflict Victim's stab wounds. Accordingly, the trial court properly acted within its discretion when it applied the deadly weapon enhancement and properly sentenced Williamson.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>01/10/2025</u>