J-S26033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAIRO ALEXANDER GUERRERO-BAUTISTA | : | |
| | : | No. 827 MDA 2024 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 23, 2024
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0004058-2021

BEFORE:  LAZARUS, P.J., OLSON, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED SEPTEMBER 02, 2025**

Jairo Alexander Guerrero-Bautista ("Guerrero-Bautista") appeals from the judgment of sentence imposed by the Berks County Court of Common Pleas ("trial court") following his convictions of three counts each of first-degree murder and aggravated assault, and one count each of conspiracy to commit first-degree murder and conspiracy to commit aggravated assault.[1] On appeal, Guerrero-Bautista challenges the sufficiency of the evidence to support his convictions of first-degree murder and conspiracy to commit first-degree murder.  We affirm.

On December 12, 2018, police were dispatched to a shooting on the 600 block of Moss Street in Reading, Pennsylvania.  Upon arriving at the scene,

---

[1]  18 Pa.C.S. §§ 2502(a), 2702(a)(1), 903(a).

officers encountered two victims lying in the street. One was deceased and the other was still alive but gasping for breath; he was later pronounced dead at the hospital. Officers then encountered a third deceased victim across the street. Joel Cintron ("Cintron") and Marli Alonso ("Alonso") were identified as the victims found deceased at the scene. Alonso was found with a gun next to him. Omar Harris ("Harris") was identified as the victim who was initially found alive on the scene. A forensic pathologist confirmed that the causes of death for all three victims were gunshot wounds.

Law enforcement began their investigation of the neighborhood and encountered Gabriel Olivencia ("Olivencia"). Olivencia stated that he saw Harris and Cintron standing outside of his home on Moss Street in the evening hours of December 12, 2018. Olivencia went inside his home and heard approximately seven or eight gunshots, a few seconds' break, and then eight more gunshots. Olivencia ran outside where he encountered Harris crying out and Cintron's legs sticking out of an alleyway.

Police further canvassed the area and gathered video evidence from locations near the 600 block of Moss Street. Police also collected twenty-four cartridge casings and several bullet fragments. Upon examination, it was determined that three separate firearms were used at the scene, and that none of the cartridge casings came from the gun located near Alonso's body.

The video footage obtained showed four individuals arriving together in a 2010 Acura TL and walking together to the 600 block of Moss Street.

Immediately following the shooting, they returned to the car and fled together. Through investigation, Guerrero-Bautista became a suspect. He was a member of the Northside gang, and had been having issues with Alonso, who was a member of the Eastside gang. Further, a video taken on December 12, 2018, showed Guerrero-Bautista threatening to hurt Alonso.

Police also noted that one of the individuals in the video footage was wearing a distinctive jacket that had fluorescent stripes on the shoulders and sleeves. Police obtained a search warrant for Guerrero-Bautista's Facebook account and found photos of him wearing the distinctive jacket. Further, police discovered rap lyrics, sent by Guerrero-Bautista, in which he described details of the murders. Additionally, two videos showed Guerrero-Bautista wearing the jacket on December 10, 2018, two days before the murders, and on January 8, 2019, approximately one month after the murders.

Police obtained an arrest warrant in September 2021, and Guerrero-Bautista turned himself in. The Commonwealth charged him with the above-mentioned crimes. Notably, he was sixteen years old at the time of the murders. The case proceeded to a jury trial, after which the jury found Guerrero-Bautista guilty.[2] On April 9, 2024, he was sentenced to serve three

---

[2] Jonathon Torres, the only named co-defendant in the case, pled guilty to three counts of third-degree murder and conspiracy prior to trial. *See* Trial Court Opinion, 10/17/2024, at 1 n.5.

consecutive terms of thirty-five years to life in prison, followed by a sentence of twenty to forty years for conspiracy.

On April 10, 2024, Guerrero-Bautista filed a post-sentence motion for a judgment of acquittal. On April 23, 2024, the trial court, sua sponte, amended one sentence for first-degree murder from thirty-five years to life to twenty to forty years of incarceration. On May 9, 2024, the trial court denied his post-sentence motion. Guerrero-Bautista filed a timely notice of appeal.

Guerrero-Bautista raises the following questions for our review:

1. Whether the evidence was insufficient to support the convictions for counts 1, 2, 3, and 4, murders of the first degree and conspiracy to commit murder of the first degree because [Guerrero-Bautista] was insufficiently identified as one of the several actors present at the crime scene or scenes?

2. Whether the evidence was insufficient to support the conviction for counts 1, 2, and 3, murders of the first degree because, even if [Guerrero-Bautista] was present at the scene or scenes of the shootings, there is no evidence that [Guerrero-Bautista] actually participated in any of the three shootings in any particular way?

Guerrero-Bautista's Brief at 5.

As Guerrero-Bautista's claims are interrelated, we will address them together. Guerrero-Bautista contends that the evidence was insufficient to support his convictions of first-degree murder and conspiracy to commit first-degree murder. *Id.* at 21-22. He argues that the Commonwealth failed to identify him as one of the perpetrators at the scene, and even if he was present at the scene, there was no evidence showing that he participated in the murders. *Id.* at 21-22, 25. He relies on the trial court's finding that the

firearm evidence "implies that there were three individuals working together to commit murder." *Id.* (citation omitted); *see also id.* at 23-24. Guerrero-Bautista claims that four people arrived at the scene of the murders and left together, but there is no evidence to suggest that the fourth person did anything other than be present at the scene. *Id.* at 23-24, 25. Relying upon the "equipoise doctrine," Guerrero-Bautista asserts that the circumstantial evidence of his involvement in the shootings "equally supports the opposite inference: that he was merely present for the conspiracy and murder committed by the three other suspects." *Id.* at 23-24; *see also id.* at 25. He also disputes that the rap lyrics documented the homicide. *Id.* at 23.

We review a challenge to the sufficiency of the evidence according to the following standard:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is de novo and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh evidence and substitute our judgment for that of the [factfinder].

*Commonwealth v. Rosario*, 307 A.3d 759, 764-65 (Pa. Super. 2023) (citation omitted).

Courts will find that evidence is insufficient to sustain a conviction when it "equally support[s] two reasonable but diametrically opposed ultimate inferences," only one of which is an appellant's guilt. *In Interest of J.B.*, 189 A.3d 390, 409 (Pa. 2018). In such cases of "equipoise," a finder of fact "must not be permitted to guess which" of "two equally and mutually inconsistent inferences" to adopt. *Id.* at 412 (quoting *Commonwealth v. Woong Knee New*, 47 A.2d 450, 468 (Pa. 1946)). In this "rare situation," an appellate court will reject the verdict and reverse the convictions. *J.B.*, 189 A.3d at 412.

Our Supreme Court has identified the elements of first-degree murder as follows: "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." *Commonwealth v. Martin*, 101 A.3d 706, 718 (Pa. 2014) (citing 18 Pa.C.S. § 2502(a)). "In reviewing whether the evidence was sufficient to support a first-degree murder conviction or convictions, the entire trial record must be evaluated and all evidence considered." *Commonwealth v. Sanchez*, 82 A.3d 943, 967 (Pa. 2013).

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy."

*Commonwealth v. Melvin*, 103 A.3d 1, 42 (Pa. Super. 2014). With respect

to the agreement element of conspiracy, this Court has explained:

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. An explicit or formal agreement can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Commonwealth v. McCall*, 911 A.2d 992, 996-97 (Pa. Super. 2006) (citation

omitted).

As it pertains to identification evidence, the law is clear that "evidence

of identification need not be positive and certain to sustain a conviction."

*Commonwealth v. Williams*, 255 A.3d 565, 579 (Pa. Super. 2021) (citation

omitted). Further, "[a]lthough common items of clothing and general physical

characteristics are usually insufficient to support a conviction, such evidence

can be considered to establish identity in conjunction with other circumstances

and identification testimony." *Id.*

The Commonwealth presented several different pieces of evidence

linking Guerrero-Bautista to the crime scene. On December 12, 2018,

approximately nine hours and forty-five minutes before the murders, Dionalis

Gomez, a classmate of Guerrero-Bautista, took a video of Guerrero-Bautista threatening Alonso, wherein he stated, "if I definitely catch him outside he's getting hit," and indicated that his gun was across the street. N.T., 3/5/2024, at 277; *see also* Commonwealth's Exhibit 132. One hour before the homicides, surveillance footage showed an individual wearing a jacket with distinctive fluorescent stripes walking a block away from the 600 block of Moss Street. N.T., 3/6/2025, at 482; *see also* Commonwealth's Exhibit 1, Slide 87. Video evidence obtained by police showed four individuals arriving in a 2010 Acura TL near the 600 block of Moss Street around 6:59 p.m. on December 12, 2018. N.T., 3/4/2024, at 148-49, 162-67, N.T., 3/6/2024, at 428-29, 434-35. The video depicts the four individuals getting out of the vehicle and beginning to walk westward. N.T., 3/4/2024, at 162-67. Another video, obtained from 637 Moss Street, showed flashes reflecting off a vehicle, consistent with muzzle flashes, and then four individuals running away at 7:03 p.m. N.T., 3/6/2024, at 440. In the video, one of the individuals was wearing the jacket with the fluorescent stripes on the shoulders. *Id.* The video showed that same individual running with his hands in his pockets, which Detective Daniel Cedeno, a homicide investigator assigned to the case, noted is how people run if they are holding an object in their pockets. *Id.* at 443-44.

Upon searching Guerrero-Bautista's Facebook account, police located an image of him wearing a jacket with distinct fluorescent stripes on the

shoulders posted on December 5, 2018. *Id.* at 470; *see also* Commonwealth's Exhibit 1, Slide 55. Further, on December 10, 2018, a classmate took a video of Guerrero-Bautista wearing the same jacket. N.T., 3/5/2024, at 282-84. Police also obtained a video from Guerrero-Bautista's social media showing him wearing the jacket and holding a firearm which was taken in December 2018. N.T., 3/6/2025, at 482; *see also* Commonwealth's Exhibit 1, Slide 86. When interviewed by Detective Cedeno, Guerrero-Bautista initially denied owning the jacket. N.T., 3/5/2025, at 330. Detective Cedeno then showed him a picture of him wearing it, to which he replied that he had given the jacket away but provided inconsistent information as to when and to whom he gave the jacket. N.T., 3/5/2025, at 330, 338. Further, police obtained footage from Reading High School from January 8, 2019—three weeks after the murders—showing Guerrero-Bautista wearing the jacket. *Id.* at 330-31.

A search of Guerrero-Bautista's Facebook account revealed rap lyrics that he sent to friends on January 7, 2019, which described and bragged about the murders:

> Northside n**** with a 30 clip walk down your block with them glocks shooting up the strip. All my n***** heartless they don't care shoot you and your bitch n***** know my body yea they know that I move them sticks. But let me tell you now that GZ about flipping all these packs chase the bag ion chase the clout, shoot you and yo man's survive wow he telling now, caught em slipping he start acting tuff gotta blow em down. Topopp GZ is valid anywhere I pulled up with ock he gon flock on gang yea he don't care we got them mops we got them chops we gonna pull up where you at and we're sending shots on moss block. Yeah we

caught them lacking gotta lay him back stuck in the trenches let
that sh*t behind it was me and Narg gripping on the nines.

N.T., 3/5/2024, at 344-45. Guerrero-Bautista admitted to writing these lyrics.
*Id.* at 341. Further, "Topopp GZ" was Guerrero-Bautista's screenname on
Facebook. N.T., 3/6/2024, at 468-69. On January 9, 2019, the lyrics were
sent to another individual with the addition of the following line: "If the feds
ask we gon tell them n***** that we blind if a opp pull up the whole gang
shooting at his spine." N.T., 3/5/2024, at 347.

The Commonwealth also introduced voice messages from the Facebook
account of Jahlik Colon, a friend of Guerrero-Bautista, celebrating the
murders, and Guerrero-Bautista's voice can be heard in the background. N.T.,
3/6/2025, at 476; *see also* N.T., 3/5/2024, at 326-27 (Guerrero-Bautista
initially denied knowing Colon, but then admitted he knew Colon).

Facebook records from Guerrero-Bautista's account showed that on
December 12, 2018, at around 8:30 p.m., Guerrero-Bautista received a
screenshot from his girlfriend that contained a threat from a "rival gang
member" regarding the murders, to which he responded, "I'm not scared."
N.T., 3/6/2025, at 477. Facebook records also showed a conversation
between Guerrero-Bautista and one of his friends, Salvador Vializ, which
occurred on December 22, 2018. *Id.* at 377-78; Commonwealth's Exhibit
152. Vializ asked Guerrero-Bautista where he was going, to which he
responded "town," which meant out of state. *Id.*; Commonwealth's Exhibit
152. Guerrero-Bautista stated that he did not know how long he would be out

of town for, and Vializ responded and told him to "lay low" because the "pigs ain't dumb." **Id.** Vializ testified that "pigs" referred to the police. N.T., 3/6/2024, at 378.

Evidence was presented that indicated that there was a rivalry between the Northside and Eastside gangs. N.T., 3/5/2024, at 284. Guerrero-Bautista was a member of the Northside gang, while Alonso was a member of the Eastside gang. **Id.** at 275, 325. Guerrero-Bautista admitted in his police interview that he and some of his friends were having issues with Alonso. **Id.** at 349. Further, Dionalis Gomez testified that she heard Guerrero-Bautista make threats toward Alonso's brother, Deuri Alonso, prior to the murders. **Id.** at 281-282.

Viewing the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as verdict winner, the record supports the finding that Guerrero-Bautista was sufficiently identified as one of the actors at the scene and that he participated in the perpetration of the murders. Guerrero-Bautista was identified at the scene by his distinctive jacket. **See Commonwealth v. Strafford**, 194 A.3d 168, 176 (Pa. Super. 2018) (stating that a defendant may be identified as the perpetrator based on circumstantial evidence). Additionally, though no video evidence showed the commission of the crime, Guerrero-Bautista was seen arriving at the scene with three other individuals at 6:59 p.m. and fleeing the scene at 7:03 PM

with his hands in his pockets, indicating that he was carrying something in his pockets. N.T, 3/6/2024, at 440, 443-44.

Further, there is sufficient evidence of a conspiracy between Guerrero-Bautista and the other three individuals because they arrived at and fled from the scene together, he was present at the scene during the murders, and he had knowledge of the crime as demonstrated through his rap lyrics and Facebook messages. *See Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa. Super. 1998) ("The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt."); *see also Commonwealth v. Jordan*, 212 A.3d 91, 98 (Pa. Super. 2019) (finding a conspiracy may be inferred where the defendant was with the shooter shortly before and shortly after the shooting).

Finally, we wholly disagree that the evidence required the jury to guess at "two equally and mutually inconsistent inferences." The circumstantial evidence clearly establishes that Guerrero-Bautista participated in the shooting; there is no support in the record for a finding that he was not a member of the conspiracy to commit the murders in question. Indeed, even if Guerrero-Bautista was not one of the shooters, he is still guilty of first-degree murder. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (stating that a conspirator is criminally liable for the actions

of his co-conspirators even if he did not act as a principal in committing the underlying crimes).

Guerrero-Bautista's claims are without merit. No relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>09/02/2025</u>